202 N.J. Super. 372 (1985)
495 A.2d 152
AMERICAN WHITE CROSS LABORATORIES, INC., A CORPORATION, AND THE NORTH RIVER INSURANCE COMPANY, A CORPORATION, PLAINTIFFS-RESPONDENTS,
v.
THE CONTINENTAL INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 25, 1985.
Decided July 3, 1985.
*375 Before Judges McELROY, DREIER and SHEBELL.
Tompkins, McGuire & Wachenfeld, attorneys for appellant (William L'E. Wertheimer, of counsel; James T. O'Halloran, on the brief).
Conway & Reiseman, attorneys for respondents (Gerald W. Conway, of counsel and on the brief).
The opinion of the court was delivered by McELROY, P.J.A.D.
The question posed by this appeal is whether plaintiffs-respondents, American White Cross Laboratories (American) and its products liability insurer and subrogee, The North River Insurance Company (North River), are entitled to defense costs, counsel fees and indemnification from defendant-appellant, The Continental Insurance Company (Continental), insurer of Absorbent Cotton Company (Absorbent), under a vendor's endorsement added to the general liability and products liability policy Continental issued to Absorbent.
The vendor's endorsement made American an additional insured of Continental but, in pertinent part, limited the additional vendor's coverage as follows:

*376 It is agreed that the `Persons Insured' provision is amended to include any person or organization (herein referred to as `vendor'), as an insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the named insured's products subject to the following additional provisions:
1. The insurance with respect to the vendor does not apply to:
(a) any express warranty, or any distribution or sale for a purpose, unauthorized by the named insured;
(b) bodily injury or property damage arising out of
(i) any act of the vendor which changes the condition of the products,
(ii) any failure to maintain the product in merchantable condition,
(iii) any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products, or
(iv) products which after distribution or sale by the named insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor;
(c) bodily injury or property damage occurring within the vendor's premises.[1]
The operative facts of this case are not complex nor is there a material dispute as to any of them.
Absorbent sells a number of products to American including absorbent cotton which it first processes for absorbency and bleaches. The cotton is then carded and sold to American in the form of "header rolls," obviously a sale in bulk, contained in cases which are marked as to the number of rolls, size and weight of each roll and the weight of the entire case. American, under an agreement with its customer Shop Rite/Wakefern, a supermarket firm, then sterilizes the cotton, cuts it into smaller units, weighs them, wraps each unit and *377 separately places it in a box, the design and the labelling of which is developed by American and its customer for sale in supermarkets. The foregoing facts are confirmed by the deposition of an employee of American who testified that Absorbent sends American cotton in a "semi-raw material state" without "any labelling whatsoever" and the small packages produced by American and eventually intended to be sold to consumers bear labels as to which Absorbent had no input as to either design or content.
On August 16, 1978, Denise Baran purchased a number of these cotton packages in a Shop-Rite supermarket and from them contrived a "costume" by wrapping cotton around all of her body except her head. While in this unusual attire, apparently at some social affair, the cotton was ignited by a match or cigarette and Baran sustained severe burns. In some manner, her husband was also burned. They sued Absorbent, American and another company, which had manufactured the paper wrapping for the cotton, on strict liability and negligence grounds. An excerpt from the deposition of an expert intended to be used at trial by the Barans reveals that he viewed the cotton product purchased by Baran as highly flammable "and for that reason ... defective unless the user of that cotton is instructed on how to use, how not to use." He opined that the product defect was a "[p]ackaging and labeling defect." The deposition of American's president, taken in the Baran suit, is of interest; he admitted that the flammability of cotton is a matter of common knowledge and that American needed no warnings from Absorbent on that subject. He also conceded that Absorbent had nothing to do with the packaging of the product sold to the Barans.
When sued by the Barans, American demanded a defense and eventual indemnification from Continental under the vendor's endorsement. Continental disclaimed coverage on the ground of the endorsement's exclusions 1(b)(1), "change in the condition of the product," and 1(b)(iv), "labeled or relabeled ... by ... the vendor," but undertook defense of Absorbent, its named *378 insured. American through its carrier, North American, investigated, defended and eventually settled the Baran suit which was then dismissed as to the other defendants. The present suit was then instituted against Continental. Cross motions for summary judgment were decided adversely to Continental's coverage position and in a later hearing before the same judge it was determined that the amount paid by North River in behalf of American to the Barans was reasonable as was the amount of defense costs claimed. Accordingly, a judgment of $620,809 in favor of American and North River was entered. This appeal followed.
No reported New Jersey case has interpreted the vendor's endorsement here considered and it has received scant attention elsewhere. The trial judge noted that there were only two decisions construing a similar endorsement, Mattocks v. Daylin, Inc., 452 F. Supp. 512 (W.D.Pa. 1978), aff'd mem., 614 F.2d 770 (3rd Cir.1979) and Sears, Roebuck and Co. v. Reliance Ins. Co., 654 F.2d 494 (7th Cir.1981). Unlike the case at hand, neither of those cases involved a claim that the product defect was a failure to warn. As we shall later explain, we accept the reasoning applied in those cases but when applied to the facts of this case, that reasoning requires a finding that American was not covered by this vendor's endorsement.
The question here presented requires analysis of the intended purposes of a vendor's endorsement, viewing realistically its nature and its place not only in the commercial marketplace but within the world of insurance from which it springs. Although the question here involved is one of intended coverage, in such analysis the law of strict liability in tort as it affects the product chain from manufacturer to distributor to retailer and eventually to the ultimate consumer cannot be ignored because it illustrates the underlying reasons for the existence of the vendor's endorsement.
When a manufacturer produces a product which contains a defect in design or one caused by faulty workmanship *379 and it is sold to a distributor who in turn sells it to a retailer, the latter two links in the chain to the ultimate consumer ordinarily are merely conduits in the stream of commerce which ends at the ultimate consumer. The manufacturing or design defect, as to which they had no creative role, was in existence when each of them received the product and each is merely a nonculpable accessory in the eventual sale. Nevertheless, each, in that role, is strictly liable to the injured ultimate user. Milchalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 394 (1982); 2 Restatement, Torts 2d, § 402A, comment f, at 350 (1965). This is so even where the product is one which is pre-packaged and is merely passed along to the consumer. Newmark v. Gimbel's Inc., 54 N.J. 585, 600-601 (1969). The nonculpable distributor or retailer is not, however, without remedy and has "an action over against the manufacturer who should bear the primary responsibility for putting the defective products in the stream of trade." Newmark, 54 N.J. at 600. It is in this complex of the facts of merchandising life and the imposition of strict liability at law that the vendor's endorsement has its natural role and serves specific purpose. Since, in the ordinary case, the liability trail eventually leads back to the manufacturer, and consequently to his insurer, it is a matter of common sense and fair dealing that the coverage of the manufacturer should be extended to the distributor and the insurance of the distributor in turn cover the retailer.
Thus, in the ordinary circumstances we have depicted, the risk of defense or indemnity loss being underwritten by extension of coverage to the vendor would appear to be not much greater than that already incurred by the existence of the basic coverage already available in the policy issued to the named insured. Although there is here no proof of the cost of premium for such extended coverage, it is a fair inference that that cost probably does not approach the premium charged for the basic products liability policy initially issued.
*380 Moreover, it is obvious that the vendor's endorsement here considered is not a grant of the same kind of coverage Continental gave to its named insured. The vendor receives a more limited form of coverage which does not protect it against its own acts proximately related to the consumer's injury. In that respect the trial judge's conclusion that when American "bought Absorbent's cotton it was also buying Absorbent's coverage," is without realistic basis. American had its own product liability coverage with North River. What it bought and what it received was what it had a right to expect  a vendor's endorsement which was unambiguous in its provisions. Granted, this single sheet of paper, sent to American in the form of a "certificate of insurance," states that the "Persons Insured" provision of the underlying products policy "is amended to include any ... organization (herein referred to as `vendor'), as an insured" but the scope of such additional coverage is immediately, and in no uncertain terms, restricted.
The endorsement states that it only covers the vendor "with respect to the distribution or sale in the regular course of the vendor's business of the named insured's products." It provides that the "insurance with respect to the vendor" does not apply to "any express warranty, or any distribution or sale for a purpose unauthorized by the named insured." (emphasis ours). With respect to coverage for claims of bodily injury, it excludes coverage where that injury arises out of an "act of the vendor" which "changes the condition of the products," or "any failure to maintain the product in merchantable condition." It also excludes coverage where the vendor fails "to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the distribution or sale of the products." These exclusions are not vague, each is directed to denial of coverage where some act of the vendor affects the product and thereby causes personal injury. This insurance is clearly designed to cover the vendor when he is only a conduit of the product in the stream of commerce but not when he is *381 the instrumentality causing bodily injury to another. The labeling or relabeling provision is to the same effect. It provides:
1. The insurance with respect to the vendor does not apply to:
* * * * * * * *
(b) bodily injury ... arising out of ...
(iv) products which after distribution or sale by the named insured have been labeled or relabeled ... by or for the vendor....
We perceive no ambiguity in this exclusion. It declares that there is no coverage for claims for "bodily injury" which arise "out of" products which after sale by the named insured "have been labeled or relabeled ... by ... the vendor." The Barans' claims for bodily injuries were premised on a failure to warn defect in American's eventual product. That product was one reduced from the bulk raw material sold by Absorbent. It was rewrapped, repackaged and independently covered by a label of American's choosing, which lacked the allegedly necessary warning as to the inherent, and commonly known, flammable property of cotton. It clearly is excluded from Continental's coverage.
In our view, the trial judge approached this case in less than realistic fashion. Where there was no genuine ambiguity he applied the principles that interpretations favoring coverage must always be adopted, Kook v. American Sur. Co. of N.Y., 88 N.J. Super. 43, 52 (App.Div. 1965); that exclusions in insurance policies must be construed narrowly, and that all ambiguities must be resolved in favor of the insured. Butler v. Bonner and Barnewell, Inc., 56 N.J. 567, 576 (1970). That approach overlooked the obvious fact that only "genuine ambiguities engage the so-called `doctrine of ambiguity.'" Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 246 (1979). Weedo also instructs us that a genuine ambiguity arises only "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Id. at 247. That is not the case here and to find the necessary ambiguity the trial judge had to strain. He deemed the Baran claim of defect not as a claim based on a failure to properly *382 warn in the label chosen by American but rather as one of "failing to label." From this premise he concluded that since the exclusion only referred to labeling and to relabeling and did not exclude "failing to label," Continental "did not intend to include failing to warn among the exceptions to coverage." We must reject this skewed reasoning. Coverage was not afforded here because in reducing Absorbent's product to a size attractive to and useable by a consumer, American made a bulk product its own. In that process American also undertook to do what the coverage here excluded: it labeled the product as its own or that of its customer and, having made it available to ordinary consumers, failed to include in its label the warning the law requires. The product defect of which the Barans complained, upon which they rested the case, and as to which North River, as products liability carrier for American settled, was created by American at that point in the stream of commerce. That claim does not fall within the vendor's coverage extended by Continental's policy and provides no basis for the indemnity sought by North River through its subrogated right.
Unlike the trial judge, we do not find that the decisions in Mattocks v. Daylin, Inc. and Sears, Roebuck and Co. v. Reliance Ins. Company require a judgment for plaintiffs.
In Mattocks, Dan River Inc. manufactured fabric which Sullcraft Manufacturing Company tailored into pajamas for Daylin Inc. Daylin was sued by the Mattocks when a pair of such pajamas, purchased from Daylin by Charlotte Mattocks for the use of her son, Kevin, were ignited and burned Kevin while he was wearing them. Daylin sued Sullcraft as a third party defendant and Sullcraft sued Dan River. Sullcraft later brought a declaratory judgment action against the Insurance Company of North America (INA), the carrier for Dan River, claiming INA was obligated to defend Sullcraft and further to indemnify it, under a vendor's endorsement, in the event Sullcraft was held liable to Daylin.
*383 The trial against Daylin resulted in a jury verdict in Daylin's favor and Sullcraft moved its declaratory suit which was then reduced to a claim for defense costs and attorney's fees. The court in Mattocks specifically noted that it had "no need to consider if Sullcraft is entitled to indemnification by INA." 452 F. Supp. at 513. The court held INA was obligated to defend Sullcraft under settled law, holding that the obligation to defend arises whenever the complaint filed by the injured party may "potentially come within the coverage of the policy." Id. at 514. The Mattocks' underlying suit against Daylin apparently was one for strict liability, based upon allegations of a failure to add a flame retardant to the cotton flannelette fabric used in the pajamas, a failure in processing one would expect could readily be traced back to INA's insured, Dan River. The court noted that at the trial the Mattocks:
also proposed a theory of liability based on defendant's failure to warn (which was rejected by the court because of plaintiff's failure to lay the proper factual foundation) with respect to the non-flame retardant propensities of the pajamas. No claim was ever made that Sullcraft's physical changes of the Dan River material caused plaintiff's injuries. [Id. at 515].
The vendor's endorsement in Mattocks contained exclusionary provisions similar to those presented here and INA claimed it was not obligated to defend Sullcraft because exclusion 1(b)(1) applied since Sullcraft "intentionally" made a "physical ... change in the form of the product" and 1(b)(iv) precluded coverage because, among other things, Sullcraft "labeled" the product sold to Daylin. These contentions were rejected by the court which held that each of these exclusions were qualified by the language of paragraph 1 which required that the excludable claim of body injury be one "arising out of" the physical change in the form of the product or the labeling. With respect to the "change in form" argument, the court held the change in form by the vendor must cause the plaintiff's injuries before the vendor is excluded from coverage under the endorsement. Id. at 515. The court also applied the "arising out of" requirement of the exclusion to INA's contention that 1(b)(iv), the labeling *384 exclusion, barred coverage. It held that the labeling undertaken by Sullcraft (apparently application of the seller's trade mark) did not cause Kevin's injuries. In short, the Mattocks court held[2] that there must be a causal nexus between the conduct of the vendor and the bodily injury before the labeling exclusion can be invoked. We have no dispute with these determinations. They represent a reasonable interpretation of the exclusionary clauses. When, however, they are applied to the factual complex presented to us, they call for an exclusion of plaintiffs' right to indemnification because the product defect here eventually and specifically asserted was that the label American used did not warn of the inherent flammability of cotton and that this failure caused the Barans' injuries.
Sears, Roebuck and Co. v. Reliance Ins. Co., which contains facts similar to those in Mattocks, followed the reasoning applied in Mattocks and attained the same result except that the court there held the carriers who had issued vendor's endorsements to Sears, a retailer, had to both defend and indemnify Sears. So far as the right to indemnification is concerned, the Sears court, in that part of the decision pertinent to this case, held that the labeling exclusion, 1(b)(iv), cannot serve to exclude coverage under the vendor's endorsement *385 unless the claim of bodily injury "arises out of" the labeling or relabeling of the product. 654 F.2d at 499. Thus, what we have said of the Mattocks decision applies as well to Sears; this case, when the general allegations of the complaint are pierced, presents the required nexus between the vendor's conduct and the bodily injury asserted by the Barans. Plaintiff's claim for indemnification for the sums paid to the Barans in settlement of their claims must be denied.
The foregoing conclusions do not mean that plaintiffs must also be barred from recovery of some part of their investigative costs, defense costs and counsel fees. The complaint filed by the Barans consisted of eight counts and except for the fourth count, which asserted the product was marketed "without notice or warning to the consuming public ... [of] its inherent propensity and danger," presented the usual mixture of very general product liability and negligence allegations common to such pleadings. These claims were not specific enough to reasonably give rise to a disclaimer. The complaint was apparently filed November 7, 1980 and, so far as the record before us is concerned, the demand for coverage under the vendor's endorsement was first made by letter on January 22, 1981. Subsequent requests by letter were made April 29 and June 29, 1981. Although there is a reference in Continental's reply of July 28, 1981 (a letter from Absorbent/Continental's attorneys to American/North River's attorneys) to "our prior exchange of correspondence," we have no idea of the substance of that correspondence and what the true state of known facts may have been at that time as to American's involvement or the question of coverage. We only know that in a deposition of plaintiff's expert taken December 7, 1981 his opinion as to the product defect was narrowed down to a failure to warn.
In this state the seminal case on the duty to defend is Danek v. Hommer, 28 N.J. Super. 68 (App.Div. 1953), aff'd o.b. 15 N.J. *386 573 (1954). That case holds that "the duty to defend comes into being when the complaint states a claim constituting a risk insured against." Id. at 77. Danek also recognizes that which Judge Learned Hand stated in Lee v. Aetna Cas. & Sur. Co., 178 F.2d 750, 752 (2d Cir.1949) (that "the insurer ought to defend such an action at least until it appears that the claim is not covered by the policy is not free from doubt"). The problem under such an approach is, of course, then made complex. The defending insurer is in a conflict with its own putative insured since it seeks to confine the facts to non-coverage. Moreover, without a reservation of rights agreement, a device which may not cure the conflict, a voluntary defense may give rise to a waiver of the exclusion or an estoppel if the insured can demonstrate prejudice. See the discussion in American Handling Equip. v. T.C. Moffatt & Co., 184 N.J. Super. 131, 139-142 (App.Div. 1982). It may be that there are other factors which should be considered but we need not dwell upon the problem at length. The parties have not briefed the issues which attend the question of whether plaintiffs may recoup some part of the claimed expenses and counsel fees, and upon the facts in the record before us we are ill equipped to do so. It is sufficient for present purposes that we recognize that plaintiffs may have such a right and, in light of that possibility, that aspect of this case is not ripe for summary judgment or appellate decision. We remand this matter for whatever steps the parties may deem necessary to a resolution of that question.
So far as the judgment entered in the Law Division holds there is coverage available to plaintiffs by reason of the vendor's endorsement and awards money damages to plaintiffs on that basis, it is reversed and vacated. The matter is remanded for such further proceedings, consistent with this opinion, as the parties may desire to undertake. We do not retain jurisdiction.
NOTES
[1] Continental's brief refers to another and later form of endorsement with language which is different from that used in the above endorsement. North River and American point out that the policy in effect at the time in question contained the above endorsement. It is also apparent that the trial judge's opinion relied upon the wrong endorsement although both forms of endorsement were furnished to the judge. There is no dispute that the above endorsement is the one applicable to this case and we will therefore consider it in this decision. Both endorsements contained the exclusionary language of 1(b)(iv), reproduced above, dealing with "products which after distribution or sale by the named insured have been labeled or relabeled...."
[2] The court's discussion of the effect of these exclusions appears to be dicta. Mattocks presented no claim for indemnification because of a settlement payment by the vendor. The single question was whether INA owed Sullcraft a defense and thus the question of whether coverage actually was provided was not implicated. The Mattocks court had already held that the very general allegations of the underlying complaint facially stated a claim which, when used against Sullcraft in Daylin's third party complaint, asserted a potential claim within the endorsement's coverage and that in such circumstances INA had to defend "until it could confine plaintiff's claims to a recovery outside the policy coverage." Id. at 515. In this connection see Lee v. Aetna Cas. & Sur. Co., 178 F.2d 750, 752-753 (2nd Cir.1949) and Danek v. Hommer, 28 N.J. Super. 68, 77-78 (App.Div. 1953), aff'd o.b. 15 N.J. 573 (1954). It is settled law that the obligation to defend "is broader than the duty to pay." Danek, 28 N.J. Super. at 79.