STANDARD ARTIFICIAL LIMB, INC.,
and The Atlantic Mutual Insurance
Co., Appellants,

v.

The ALLIANZ INSURANCE
CO., Respondent.

No. 65754.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 14, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 20, 1995.

Application to Transfer Denied
April 25, 1995.

James Parker Lemonds, Holtkamp, Liese, Beckmeier & Childress, P.C., St. Louis, for appellants.

Peter Joseph Dunne, Rabbitt, Pitzer & Snodgrass, St. Louis, for respondent.

SIMON, Judge.

Standard Artificial Limb, Inc. (Standard) and its insurer, The Atlantic Mutual Insurance Company (Atlantic), appellants, appeal from a judgment in favor of respondent, The Allianz Insurance Company, in their declaratory judgment action against respondent for indemnity of appellants' costs in defending and settling the underlying claim, including attorneys' fees.

On appeal, appellants contend the trial court erred in: (1) concluding that respondent had no duty to defend or indemnify Standard because the vendors endorsement to respondent's policy provided coverage for the allegations in the personal injury petition and obligated respondent to defend and indemnify Standard, in that: (a) the personal injury petition clearly alleged facts stating a claim arguably within the coverage of the vendors endorsement; (b) the court failed to articulate clearly the controlling rule of law, which is that an insurer will have a duty to defend and indemnify its insured vendor under a vendors endorsement when the personal injury petition alleges a claim arguably within the scope of the vendors endorsement; (c) to the extent that the court correctly stated the controlling rule of law, the court failed to apply it but instead reached an erroneous conclusion that a "nexus" existed between the acts of Standard and the injuries alleged in the personal injury petition by applying a different rule; and (d) the court incorrectly held that the personal injury petition alleged no facts stating a claim arguably within the coverage of the vendors endorsement; (2) failing to conclude that the vendors endorsement was ambiguous as a matter of law, which would require that the vendors endorsement be construed to provide coverage to Standard, because the exclusionary provisions reasonably are subject to constructions which exclude coverage under all circumstances, in that the trial court: (a) nullified and made illusory the coverage provisions in the vendors endorsement; (b) vitiated the intent of the parties to the vendors endorsement; (c) violated the purpose served by vendors endorsements generally by placing a construction upon the exclusionary provisions which excluded Standard from coverage under the vendors endorsement under all circumstances; and (3) concluding that respondent's refusal to defend and indemnify Standard was not vexatious because the court knew respondent acted in bad faith in refusing the tender of the defense by Standard and Atlantic, in that the court was presented with substantial evidence showing that respondent was aware of an adverse judgment adjudicating respondent to be obligated to defend and indemnify its insured vendor in a California case involving the identical vendors endorsement. We affirm.

The facts were stipulated by the parties and are not in dispute. Standard, a Missouri corporation, manufactures prosthetic appliances, and provides services of certified prosthetists to make the appliances from component parts for individual clients. Otto Bock Orthopädische Industrie GmbH & Co. (Bock), a German corporation, manufactures the components in Germany, and Otto Bock U.S., Inc. (Bock U.S.), a Minnesota corporation, distributes Bock products in the United States. Respondent is the insurer of Bock and Bock U.S.

Mr. Poe was an above-the-knee amputee who walked with the use of artificial lower limbs. In March, 1988, Mr. Poe received a prescription for new artificial lower limbs. He consulted with certified prosthetist Frank Bandy of Standard, who measured and fitted Mr. Poe and assembled the limbs for him.

Some of the components used by Mr. Bandy for creating the artificial lower limbs were manufactured by Bock and sold to Standard by Bock U.S., including the foot assembly and the leg adaptor to which the foot assembly was attached by means of four set-screws.

On August 12, 1988, Mr. Poe and his wife filed a petition in the circuit court against Standard, alleging Mr. Poe was injured when the right foot assembly of his artificial limb came loose causing him to fall, and that the proximate cause of his injuries was Standard's negligence. On January 25, 1989, the Poes filed their first amended petition adding as defendants Bock and Bock U.S., and alleging that Standard: failed to properly and securely tighten the screws holding Mr. Poe's right foot in a fixed position so that the foot would not move around or come loose or become unstable; failed to use a type of screw such as a Ny–Lock type screw to secure the right foot to the prosthetic appliance, which would not back-off or work loose permitting the right foot to move around or come loose or become unstable; failed to use a bonding medium or material or paste or glue or other adhesive on the screws used to secure the right foot to the prosthetic appliance so that said screws would not back-off or work loose permitting the right foot to move around or come loose or become unstable; designed, manufactured and/or distributed the prosthetic appliance which Standard knew or should have known was dangerous, defective and not reasonably safe for the intended use; failed and omitted to warn and notify Mr. Poe of the defect in design and/or manufacture and/or assembly of the prosthetic appliance; and failed and omitted to warn and notify Mr. Poe of the dangerous propensities, design defect, and/or manufacturing and/or assembling defect of the prosthetic appliance. The petition made identical allegations against Bock and Bock U.S. Sub-

sequently, Standard, Bock U.S., and Bock filed cross-claims against each other. Standard and Atlantic made demand upon respondent to defend and indemnify Standard under the vendors endorsement to Bock and Bock U.S.'s policy, which provides in pertinent part:

It is agreed that the "Persons Insured" provision is amended to include any person or organization designated below (herein referred to as "vendor"), as an insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the named insured's products designated below subject to the following additional provisions:

1. The insurance with respect to the vendor does not apply to:

(a) any express warranty, or any distribution or sale for a purpose, unauthorized by the named insured;

(b) bodily injury or property damage arising out of

(i) any act of the vendor which changes the condition of the products,

(ii) any failure to maintain the product in merchantable condition,

(iii) any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products, or

(iv) products which after distribution or sale by the named insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor;

(c) bodily injury or property damage occurring within the vendor's premises.

2. The insurance does not apply to any person or organization, as insured, from whom the named insured has acquired such products or any ingredient, part or container, entering into, accompanying or containing such products.

Respondent refused to defend and indemnify Standard. Depositions of two of respondent's agents indicate that they concluded

that Mr. Bandy failed to apply Loctite to the screws of Mr. Poe's prosthetic device, and that because of this failure, sections 1.(b)(i) and/or 1.(b)(iii) of the vendors endorsement applied.

Appellants filed their petition for declaratory judgment alleging that respondent must defend and indemnify completely (or alternatively, participate in the defense and indemnity of) Standard in the Poes' suit because Standard is an insured vendor under the vendors endorsement, and that respondent has vexatiously refused to defend and indemnify Standard.

Later, the Poes settled their claims against Standard, Bock and Bock U.S. prior to trial for $157,500.00. Standard, Bock, and Bock U.S. agreed that all cross-claims or potential claims for contribution under tort law theories would be dismissed with prejudice subject to the declaratory judgment action.

After a hearing, the trial court issued its findings of fact, conclusions of law, and order. In its findings, the court, having considered the depositions and exhibits, incorporated the parties' stipulation of facts, and found that Standard and Mr. Bandy did not use Loctite or any other bonding agent on the set-screws which secured the foot assembly of the artificial limb to the leg adaptor in direct contravention of the manufacturer's recommendations and requirements. The court made the following conclusions of law:

3. An insurer's duty to defend is determined by the provisions of the liability policy and the allegations of actual facts known or which reasonably should have been known to the insurer at the commencement of the underlying action.

Defendant had no duty to defend Standard under the Vendors Endorsement because the [Poes'] Petition ... did not allege facts which stated a claim potentially within the policy's coverage. The express factual allegations of negligence in the Petition concerned acts or omissions which were attributable solely to Standard, not [respondent's] insured, the manufacturer. The allegations attributable to Standard were not subject to coverage under the language of the Vendors Endorsement, because they concerned bodily injury arising

out of acts or omissions by Standard which fell within policy exclusions.

Though the Petition asserted claims for product design defect and failure to warn against [respondent's] insured which would appear to invoke a duty to defend, these claims were derived solely from and made reference to the acts and omissions attributable to Standard. Because Standard's alleged acts and omissions were outside the scope of the Vendors Endorsement, any duty to defend existed in the underlying case only if [respondent's] insured had potential liability apart from that of Standard. The Petition did not allege a basis of liability against [respondent's] insured independent of that alleged against Standard. There is no evidence [respondent] knew of additional facts from which a duty to defend might arise. As a result, there was no duty to defend.

4. [Respondent] had no duty to indemnify Standard under the Vendors Endorsement. Standard is excluded from coverage under paragraph 1.(b)(iii) of the Vendors Endorsement because neither it nor Mr. Bandy used "Loctite" on the set-screws which secured the foot appendage of Mr. Poe's artificial limb to the leg adaptor. This omission constitutes a failure to make such inspections, adjustments, tests or servicing as Standard had agreed to make or normally undertook to make in the usual course of its business, in connection with the distribution or sale of the products of ... Bock U.S..... Mr. Poe's injuries arose out of this failure on the part of Standard.

5. The Vendors Endorsement is not ambiguous as a matter of law.

6. [Respondent's] refusal to defend and indemnify [appellants] was not vexatious or unreasonable.

(Citations omitted.) The court ordered judgment be entered in favor of respondent.

It is well-established that the judgment or decree will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Abco Tank and Manufacturing Co. v. Feder-*

*al Insurance Co.*, 550 S.W.2d 193, 197[1] (Mo. banc 1977).

■ For the sake of logical presentation, we first will address appellants' second point, in which they assert that the trial court erred in failing to conclude that the vendors endorsement was ambiguous as a matter of law, which would require that the vendors endorsement be construed to provide coverage to Standard, because the exclusionary provisions reasonably are subject to constructions which exclude coverage under all circumstances. Specifically, appellants argue that Standard cannot comply with both 1.(b)(i) and 1.(b)(iii) of the vendors endorsement under any circumstances and, thus, the endorsement is worthless.

■ The interpretation of the meaning of an insurance policy is a question of law. *Chase Resorts, Inc. v. Safety Mutual Casualty Corp.*, 869 S.W.2d 145, 150[5] (Mo.App. E.D.1993). In construing an insurance policy, the words must be given their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties. *Id.* at 150[6]. Exceptions and limitations contained in insurance policies should be construed strictly against the insurer. *Id.* at 150[12]. The language of an insurance policy is ambiguous when it reasonably and fairly is open to different constructions. *Id.* at 150[7]. Ambiguity arises when there is duplicity, indistinctness, or uncertainty of meaning. *Id.* at 150[8].

The parties have not referred us to any Missouri cases addressing the vendors endorsement presented here, nor has our research uncovered any. Informative is *American White Cross Laboratories, Inc. v. Continental Insurance Co.*, 202 N.J.Super. 372, 495 A.2d 152 (A.D.1985). In *American,* manufacturer sold cotton to vendor without any labelling, and vendor packaged the cotton for sale in supermarkets. *American,* 495 A.2d at 154, 155. Plaintiff purchased a number of such cotton packages, and created a costume with the cotton by wrapping it all around her body except her head. "While in this unusual attire, apparently at some social affair, the cotton was ignited by a match or cigarette," and she "sustained severe burns." Her husband also was burned. *Id.* at 155. Plaintiff

and her husband sued vendor (and others), alleging vendor's label failed to warn of the flammability of cotton. Vendor then demanded manufacturer's insurer provide it a defense and eventual indemnification pursuant to a vendors endorsement to manufacturer's policy identical to the one presented here. *Id.* at 154, 155. Insurer refused, and subsequently vendor, through its carrier, investigated, defended, and eventually settled plaintiffs' suit. Vendor and its carrier then sued manufacturer's insurer for indemnification of the defense costs, and the trial court found for vendor and its carrier. On appeal, the court reversed and remanded, finding the vendors endorsement to be unambiguous, *id.* at 154, 156[3], reasoning each exclusion of the endorsement is directed to the denial of coverage where some act of the vendor affects the product and thereby causes personal injury, and that this insurance is clearly designed to cover the vendor when it is only a conduit of the product in the stream of commerce but not when it is the instrumentality causing bodily injury to another. *Id.*, at 156–57[4]. The court held that vendor was excluded under 1.(b)(iv) of the vendors endorsement identical to the endorsement presented here because plaintiffs' petition asserted vendor used a label which did not warn of the inherent flammability of the cotton packages, and that this failure caused plaintiffs' injuries. *Id.* at 158–59[7].

We note that products liability coverage may be extended to distributors or retailers of such products under a vendors endorsement, and that such endorsement is designed to cover those vendors who do not alter materially the manufactured product of the insured manufacturer. Rowland H. Long, The Law of Liability Insurance § 3.08, at 3–153 n. 7 (1994); *see also* Couch on Insurance § 44A:49–50, 44:397 (Rev.2d ed. 1981 & Supp.1993); 46 C.J.S. Insurance § 972 (1993). Here, the exclusions are not vague and are directed to the specific acts of the vendor in selling the products which materially alter or change them. Thus, we find the endorsement to be unambiguous. Point denied.

In their first point, appellants essentially contend that the trial court erred in concluding that respondent had no duty to defend or indemnify Standard because the vendors endorsement provided coverage for the allegations in the petition and obligated respondent to defend and indemnify Standard.

The duty of a liability insurer to defend pursuant to its policy is determined by comparing the language of the insurance contract and the allegations of the petition in the action brought by the person injured or damaged. *Moore v. Commercial Union Ins. Co.*, 754 S.W.2d 16, 18[1] (Mo.App.1988). If the complaint alleges facts which state a claim potentially within the policy's coverage, there is a duty to defend. *Id.*

However, a liability insurer's duty to defend does not depend alone upon the allegations of the petition filed against the insured. *Travelers Ins. Co. v. Cole*, 631 S.W.2d 661, 665[6] (Mo.App.1982). The insurer cannot ignore safely actual facts known to it or which could be known to it or which could be known from reasonable investigation. *Zipkin v. Freeman*, 436 S.W.2d 753, 754[1] (Mo.1968). Further, the facts known or ascertainable control the obligation to defend. *Hawkeye–Security Ins. Co. v. Iowa National Mutual Ins. Co.*, 567 S.W.2d 719, 721[3] (Mo.App.1978). Actual facts are those facts which were known, or reasonably should have been apparent at the commencement of the suit and not the proof made therein or the final result reached. *Marshall's U.S. Auto Supply, Inc. v. Maryland Casualty Co.*, 354 Mo. 455, 189 S.W.2d 529, 531[1,2] (1945). If additional facts are ascertained which show that the action is not within the coverage of the policy, the insurer is not obligated to afford a defense. *Travelers*, 631 S.W.2d at 665[7].

Here, the trial court found that Standard did not use Loctite or any bonding agent in direct contravention of the manufacturer's recommendations and requirements. Further, the court found that this was in violation of paragraph 1.(b)(iii) of the endorsement. The sparse record on appeal indicates that these findings are not against the weight of the evidence. Point denied.

Since respondent had no duty to defend or indemnify, its refusal to do so was not vexatious. Point three is denied.

Judgment affirmed.

AHRENS, P.J., and KAROHL, J., concur.