705 So.2d 1173 (1997)
G. Sue Hulsey, Wife of/and James E. HULSEY, Sr.
v.
SEARS, ROEBUCK AND CO. and Allstate Insurance Company.
No. 96 CA 2704.
Court of Appeal of Louisiana, First Circuit.
December 29, 1997.
*1174 Michael A. Lombard, Mandeville, for Plaintiffs-Appellants G. Sue Hulsey and James Hulsey, Sr.
Albert C. Miranda and Jeffrey K. Warwick, Metairie, for Defendant-Appellee Weslo Manufacturing Company, Inc.
David P. Sirera, Covington, for Defendants-Appellees Sears Roebuck & Company and Allstate Insurance Company.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
LOTTINGER, Chief Judge.
This is an action for personal injuries and lost earnings allegedly sustained by plaintiff while trying out an exercise treadmill at the *1175 invitation of defendant store's employee. From a jury verdict finding no negligence on behalf of defendant store or its employee, plaintiffs now appeal. Defendants separately appeal from the trial court's dismissal of their third-party demand seeking defense and indemnification from the treadmill's manufacturer.

FACTS
On July 2, 1992, plaintiffs, James and Sue Hulsey went to the Sears Roebuck & Company (hereafter, "Sears") store in Slidell, Louisiana to obtain information about a treadmill exercise machine. Mr. Hulsey, then age 59, was interested in purchasing a treadmill to aid him in his physical rehabilitation following heart surgery six months earlier.
Upon entering the sporting goods section of defendant's store, Mr. and Mrs. Hulsey were approached by Bill Zielske, a salesman employed by Sears. After explaining the features of the treadmill to Mr. and Mrs. Hulsey, Mr. Zielske suggested that Mrs. Hulsey walk on the treadmill. After briefly demonstrating the treadmill to Mrs. Hulsey, Mr. Zielske invited Mr. Hulsey to try out the treadmill.
Plaintiffs allege that as Mr. Hulsey was walking on the treadmill, Mr. Zielske placed his arm across the top of the treadmill console as he continued to explain the features of the treadmill to Mrs. Hulsey. According to plaintiffs, the pace of the treadmill increased without warning. This sudden action purportedly caused Mr. Hulsey to loose his footing and fall off of the end of the treadmill twisting his left ankle. Plaintiffs further allege at that point, Mr. Zielske inquired if Mr. Hulsey was all right and offered to get him a chair. Mr. Zielske then purportedly asked if Mr. Hulsey wanted to try out the treadmill again. According to plaintiffs, Mr. Hulsey attempted to walk on the treadmill again, but after a few moments, asked that the machine be turned off. Mr. and Mrs. Hulsey then proceeded to the sales desk where they purchased the treadmill which was delivered to their home several weeks later. Plaintiffs concede that other than themselves, Mr. Zielske was the only witness to this incident, and that no accident report was filled out on that date.[1]
Mr. Hulsey testified that upon the advice of his cardiologist, Dr. Anthony Morales, Jr., he sought treatment on July 8, 1992, from Dr. James Gosey, Jr., an orthopedist, who diagnosed Mr. Hulsey as having sustained a strain or partial rupture of his left Achilles tendon. Due to this injury, Mr. Hulsey sustained a shortened heal cord, or Achilles tendon, and a resultant loss of flexibility in his left foot, as well as chronic swelling in his left leg.[2]
Six to eight weeks following the alleged treadmill incident, Mr. Hulsey claimed that he, fitted with a walking cast and carrying a cane, accompanied his wife on a shopping trip to Sears. On that date, he purportedly looked up Mr. Zielski, and advised him of the injury which resulted from his fall from the treadmill. According to Mr. Hulsey, Mr. Zielske barely acknowledged him.[3] Mr. Hulsey conceded that he thereafter left the store without requesting that an accident report be filled out.
Mr. Hulsey further testified that subsequently in late August or early September of 1992 his boss of thirty-two years, Mr. C.W. Dudley, Jr., advised him that he would be closing the management company which employed Mr. Hulsey due to the anticipated length of Mr. Hulsey's convalescence following his leg injury.[4]
*1176 In a letter dated September 24, 1992, Mr. Hulsey's attorney notified Sears of the Hulseys' pending claim. The Hulseys ultimately filed suit against Sears and its insurer, Allstate Insurance Company (hereafter, "Allstate"), claiming that Mr. Hulsey's injuries resulted from Sears' failure to properly train its employee in the use of the treadmill. Mrs. Hulsey joined in the suit and asserted a claim for loss of consortium.[5] In their answer to the lawsuit filed by the Hulseys, defendants, Sears and Allstate, inserted a third-party demand for defense and indemnification from Weslo Manufacturing Company (hereafter, "Weslo Manufacturing"), the manufacturer of the treadmill. Defendants alleged that Weslo Manufacturing had, in full force and effect, a policy of insurance with the Home Insurance Company with a vendor's endorsement, which would indemnify Sears for any claim for bodily injury arising out of the demonstration of its product on the premises of Sears.

ACTIONS OF THE TRIAL COURT
This matter was tried before a jury of twelve persons on June 3 through June 6, 1997, with the jury ultimately concluding that Sears was not answerable for the injuries purportedly sustained by Mr. Hulsey on the treadmill. In accordance with the jury's finding, judgment was thereafter rendered in favor of defendants, Sears Roebuck & Company and Allstate Insurance Company and against plaintiffs, G. Sue Hulsey, wife of/and James E. Hulsey, Sr., dismissing their claims with prejudice.
The issues raised by defendants, Sears and Allstate, in their third-party demand against Weslo Manufacturing were, by agreement of the parties, decided by the court. The court ruled in favor of third-party defendant, Weslo Manufacturing, and rendered a judgment in accordance therewith which dismissed, with prejudice, the third-party demand of Sears and Allstate.
Following the denial of their subsequent Motion for Judgment Notwithstanding the Verdict and/or New Trial, Mr. and Mrs. Hulsey now appeal. Sears and Allstate also appeal the dismissal of their third-party demand against Weslo Manufacturing.

ASSIGNMENTS OF ERROR
In connection with their appeal, plaintiffs assign as error the jury's finding that Sears, through its employee Bill Zielske, was not negligent. Additionally, defendants, Sears and Allstate, in their capacity as third-party plaintiffs, further assign as error the trial court's finding that the defense and indemnity provisions of the policy issued by Weslo Manufacturing's insurer, the Home Insurance Company, were not brought into play by the allegations contained in plaintiffs' petition for damages.

ANALYSIS AND DISCUSSION
The first issue presented for our consideration is Mr. and Mrs. Hulsey's assertion that the jury's verdict was manifestly erroneous, and must, therefore, be reversed.
In our consideration of this issue, we are mindful that Article V, § 10(B), of the Louisiana Constitution of 1974 provides that the appellate jurisdiction of a court of appeal extends to law and facts. The exercise of this jurisdiction, however, has been limited by the jurisprudential rule that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Weatherford v. Commercial Union Insurance, 94-1793, 94-1927, p. 5 (La.2/20/95); 650 So.2d 763, 765-66; Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993). If the trial court or jury findings are reasonable in light of the record reviewed in *1177 its entirety, the court of appeal may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Weatherford, 94-1793, 94-1927, p. 6, 650 So.2d at 766; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Ferrell v. Fireman's Fund Insurance, 94-1252, p. 4 (La.2/20/95); 650 So.2d 742, 745-46; Rosell, 549 So.2d at 844. When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact's findings. Ferrell, 94-1252, p. 4, 650 So.2d at 746; Rosell, 549 So.2d at 844. An appellate court may find manifest error or clear wrongness in a finding purportedly based upon a credibility determination where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story. Ferrell, 94-1252, p. 5, 650 So.2d at 746; Stobart, 617 So.2d at 882. This principle of review is based not only upon the trial court's better capacity to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts. Weatherford, 94-1793, 94-1927, p. 6, 650 So.2d at 766.
In order to reverse a factfinder's determinations on the basis of manifest error, the court of appeal must satisfy a two-part test: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must also determine that the record establishes that the finding is clearly wrong. Weatherford, 94-1793, 94-1927, p. 6, 650 So.2d at 766; Stobart, 617 So.2d at 882.
After reviewing the record in this case in its entirety, we cannot say that the jury's finding of no negligence on the part of Sears, or its employee, Bill Zielske, was manifestly erroneous.
The remaining issue to be addressed is whether the trial court erred in its determination that the defense and indemnity provisions of the Home Insurance Company policy provided to Sears by Weslo Manufacturing were not brought into play by the allegations contained in plaintiffs' petition for damages.
Based upon our review of the record in this matter, it is apparently undisputed that, pursuant to its contract with Sears, Weslo Manufacturing provided insurance coverage to Sears through a vendor's endorsement to its insurance policy issued by the Home Insurance Company. The language at issue in the vendor's policy provides as follows:

ADDITIONAL INSURED

(VendorsBroad Form)
It is agreed that the "Persons Insured" provision is amended to include any person or organization (herein referred to as "vendor"), as an insured, but only with respect to the distribution or sale in regular course of the vendor's business of the named insured's products subject to the following additional provisions:
1. The insurance with respect to the vendor does not apply to:
a) any express warranty unauthorized by the named insured;
b) bodily injury or property damage arising out of
(i) any physical or chemical change in the form of the product made intentionally by the vendor,
(ii) repacking, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instruction from the manufacturer and then repacked in the original container,
(iii) demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product, or
(iv) products which after distribution or sale by the named insured, have been labeled or relabeled or used as a *1178 container, part or ingredient of any other thing or substance by or for the vendor.
Third-party plaintiffs, Sears and Allstate, assert that the policy of insurance provided by the Home Insurance Company provided primary insurance coverage in this matter as the coverage clearly falls within the vendor's endorsement, specifically, the demonstration of the Weslo Manufacturing treadmill for sale at Sear's store. Conversely, third-party defendant, Weslo Manufacturing, argues that the contracts between Weslo Manufacturing and Sears only required Weslo Manufacturing to obtain product liability insurance, not insurance sufficient to protect Sears from the negligence of its own employees. The trial court, in its oral reasons for the denial of the third-party demand of Sears and Allstate, concluded,
A review of the subject contract and insurance policy in the case leads the Court to conclude the following: Weslo, the manufacturer of the treadmill, complied with the request [by Sears] to provide product liability coverage with a policy issued by the insurance company, which it did. The Court adopts the reasons contained in Illinois State [sic] versus American Manufacturing Mutual Insurance Company[[6]] and finds that the vendor endorsement is to provide coverage for Sears only for claims arising out of the product, not for negligence of its employee.
As we have noted, the trial court adopted the reasoning of the court in Dominick's Finer Foods, Inc. v. American Manufacturers Mutual Insurance Company, 163 Ill. App.3d 149, 114 Ill.Dec. 389, 516 N.E.2d 544 (Ill.App.1987). In Dominick's, the court, after examining the language of the above-cited vendor's provision, determined:
The question here presented requires analysis of the intended purpose of a vendor's endorsement. No reported Illinois case has determined the breadth of coverage provided by this policy extension. We note, however, that all the reported decisions involving this provision considered claims which arose from the product itself. [Citations omitted] Looking for guidance to these cases and American White Cross v. Continental Insurance Co. (1985), 202 N.J.Super. 372, 495 A.2d 152, we find that the extension of a manufacturer's insurance coverage to the distributor and retailer of his products occurred as a result of the imposition of strict product liability. Under this theory, the retailer or distributor became strictly liable for injuries to the ultimate user of the product, even though he may simply be a conduit of the product and nonculpable. (See Restatement (Second) of Torts sec. 402A (1965).) Of course, the retailer or distributor has an action over against the manufacturer (and subsequently his insurer) who bears the primary responsibility for putting the defective product into the stream of commerce. The extension of the manufacturer's insurance coverage to the vendors of the product, through a vendor's endorsement, merely alleviates the need for repetitious litigation and encourages vendors to market the product of the insured. It is, therefore, within this context that we consider the scope of this vendor's endorsement.
Dominick's, 163 Ill.App.3d at 151-152, 114 Ill.Dec. at 391, 516 N.E.2d at 546.
We recognize that the facts recited in Dominick's are somewhat different from those set forth in the case sub judice. In Dominick's, a grocery store, which was named as an additional insured on an insurance policy issued to a soft-drink bottling company, sought a declaratory judgment as to whether the insurer was obligated to defend and indemnify the store in an action brought by a bottling company employee who slipped and fell on the grocery store's loading dock while delivering products to the store. The court in Dominick's ultimately concluded that the insurer properly declined coverage inasmuch as the employee's complaint alleged that his injury was caused by the dangerous and slippery condition of the store's loading dock and rather than the use of the product.
*1179 In the case at bar, the Hulsey's petition alleged that Mr. Hulsey was injured through the following acts of negligence or fault on the part of Sears:
a. Failing to instruct and/or properly instruct its store personnel in the proper operation of the equipment it sells;
b. Failing to warn plaintiff that the machine would jolt [[7]];
c. All other acts of commission or omission which may be proven at time of trial.
In light of the trial court's adoption of the rationale utilized by the court in Dominick's, it is clear that the court below interpreted the policy's exclusion of coverage for "bodily injury ... arising out of ... demonstration... except such operations performed at the vendor's [i.e., Sears'] premises in connection with the sale of the product" to mean that coverage would be provided where the plaintiff was injured during a sales demonstration on the vendor's premises as a result of a defect in the product itself. There being no indication whatsoever that the treadmill performed any differently than the manner in which it was intended, the trial court declined to extend coverage. We find no error in this determination.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is hereby affirmed. All costs associated with this appeal are assessed equally against plaintiffs, James E. Hulsey, Sr. and G. Sue Hulsey, and third-party plaintiffs, Sears Roebuck & Company and Allstate Insurance Company.
AFFIRMED.
NOTES
[1] Mr. Zielske testified at trial that he had no recollection of the treadmill accident as described by Mr. Hulsey, and that if such an accident would have occurred, he would have reported it to the office immediately.
[2] In his testimony at trial, Dr. Gosey stated that the chronic swelling in Mr. Hulsey's left leg was attributable to a combination of factors, namely, the injury to his Achilles tendon and the prior harvesting of a portion of the saphenous vein in his left leg in connection with his bypass surgery in January of 1992.
[3] Mr. Zielske further testified that he had no recollection of Mr. Hulsey returning to the store and advising him of his injury.
[4] Mr. Hulsey later conceded on cross-examination that he was terminated because the bank, which held the bonds on the Holiday Inn which he managed for Mr. Dudley, insisted that a national management group with ties to nation-wide advertising be retained to manage the hotel.
[5] The Hulseys testified at trial that as a result of his injury, Mr. Hulsey experienced a great deal of frustration, and that this, coupled with the additional duties assumed by Mrs. Hulsey, placed such a strain on their relationship that their marriage ended in divorce in February of 1994. The couple did, however, reconcile thereafter, and their divorce was annulled in September of 1994.
[6] The trial court was obviously referring to the case of Dominick's Finer Foods, Inc. v. American Manufacturers Mutual Insurance Company, 163 Ill.App.3d 149, 114 Ill.Dec. 389, 516 N.E.2d 544 Weslo Manufacturing.
[7] It should be noted that the Hulsey's petition contains no allegation that the machine itself was defective, or that it operated in a manner inconsistent with the standards set by its manufacturer.