**LIBERTY MUTUAL INSURANCE COMPANY, Respondent,**

v.

**IGF INSURANCE COMPANY, Appellant.**

**No. 65713.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 13, 1994.

Robert Jay Danis, St. Louis, for appellant.

Carl C. Pohle, St. Louis, for respondent.

WHITE, Judge.

This is an appeal from the trial court's sustaining a motion for summary judgment in favor of Liberty Mutual Insurance Company (Liberty Mutual). The trial court found IGF Insurance Company (IGF) had the duty of primary coverage to Samuel Wilson for an automobile collision which is the subject of an

underlying suit pending in the Circuit Court of the City of St. Louis. IGF contends the trial court erred because its insured, Gary Gormley, had no insurable interest in the vehicle Samuel Wilson was operating at the time of the collision. We affirm.

On August 17, 1991, Gary Gormley, a salesperson at American Water Treatment, Inc., purchased a 1971 Pontiac Firebird from Samuel Wilson, the President of the company. Gormley was to pay for the Firebird through payroll deductions and Wilson perfected a first lien interest in the vehicle.

Gormley then purchased an insurance policy on the Firebird from IGF. This policy provided liability and uninsured motorist coverage. The parties stipulated this policy covered the time period when the accident occurred. This policy provided in Part A—Liability Coverage:

A.) We will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.

B.) 'Insured' as used in this Part means: ... 2. Any person using 'your covered auto.'

The policy defines "your covered auto" as "any vehicle shown in the Declarations" and the insurance card from the agency representing IGF declared the Firebird to be a "covered auto."

Gormley called Wilson on March 4, 1992 to tell him the Firebird had "quit running" and he had "better come get it." Gormley told Wilson he had purchased another car to replace the Firebird and had no intention of making any more payments to Wilson. Gormley also advised Wilson he would leave his license plates and insurance card with the car. Wilson claims he told Gormley he would still have to pay what he owed, depending on the condition of the car.

Based upon the conversation of March 4, 1992, Wilson went immediately to the car, which was parked by a meter in Clayton. Wilson found the insurance card on the passenger seat and observed the license plates were still on the car. Wilson then proceeded

to drive it home in order to "protect [his] interest." He feared, if left, the car would be towed or vandalized. While driving home, Wilson was involved in an automobile accident. When the police asked him about insurance coverage, Wilson presented the insurance card Gormley had left in the car.

At the time of the accident, Wilson carried a commercial automobile policy with Liberty Mutual, in the name of American Water Treatment, Inc., providing liability coverage for "any auto" driven by the company's employees. Also at the time of the accident, the official title of the Firebird remained in Gormley's name. Gormley had not reassigned the title and Wilson had taken no steps to retitle the car.

Liberty Mutual filed a Petition for Declaratory Judgment asking the Court to declare IGF, by virtue of the insurance policy issued to Gormley, provided coverage to Wilson for this accident. Cross motions for summary judgment were filed with the court and depositions of both Wilson and Gormley were made part of the record. The trial court entered its Order sustaining Liberty Mutual's motion for summary judgment and declared IGF had a duty of primary coverage to Wilson. This appeal followed.

The court's review of a grant of summary judgment is essentially de novo and the criteria for testing the propriety of summary judgment on review are no different from those which the trial court should employ initially when deciding the motion. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The party moving for summary judgment has the burden of establishing a legal right to judgment and the absence of any genuine issue as to any material fact required to support that right to judgment. *Id.* at 378. "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *Id.* at 380.

In the present case, there is little dispute as to the facts. The issue is whether IGF had the duty of primary coverage to Wilson for the accident of March 4, 1992. IGF argues in its sole point on appeal Gorm-

ley had no insurable interest in the car at the time of the accident and, therefore, the trial court erred in sustaining Liberty Mutual's motion for summary judgment. We disagree.

IGF contends the events prior to the automobile accident divested Gormley of all of his ownership interest in the vehicle. According to IGF, Gormley's coverage with respect to the Firebird terminated because he no longer had an insurable interest in the car. The Missouri Supreme Court has held liability coverage which is premised on ownership, maintenance or use of a designated automobile terminates with respect to the automobile upon a change of ownership. *Pennsylvania National Mut. Casualty Ins. Co. v. State Farm Mut. Automobile Ins. Co.*, 605 S.W.2d 125, 127 (Mo. banc 1980). However, § 301.210 RSMo Supp.1993 requires for a change of ownership of a motor vehicle, the holder must endorse the title and deliver it to the other party at the time of transfer. This court in *American Economy Insurance Co. v. Paul,* 872 S.W.2d 496, 499 (Mo.App.E.D. 1994), held the legislature's passage of the Motor Vehicle Financial Responsibility Law, § 303.025 RSMo 1986, indicates a seller's failure to fully comply with the assignment of title requirements should not operate to defeat the acquisition of title or insurance coverage. However, in this case Gormley's statements during the March 4, 1992 phone call were not enough to constitute a legal transfer of ownership.

IGF also argues Wilson's taking possession of the car was a repossession which under § 301.215 RSMo Supp.1993 shifted the burden of retitling to Wilson. We disagree with this argument for two reasons. First, we find no language in the statute creating a duty for Wilson to obtain a repossessed title from the Director of Revenue on the day Gormley informed him he had abandoned the car by a parking meter. Section 301.215 states a lienholder with a legal right to repossession "may obtain a certificate of ownership" with the written consent or written notice to the owner. This does not translate into a duty for Wilson to have retitled the car before he went with Gormley's permission to protect it from being vandalized or towed. Second, we find Wilson's actions in response to Gormley's phone call do not constitute a repossession. Instead, based on Gormley's directive during the conversation for Wilson to "come get it" along with his telling Wilson he would leave the insurance card with the car, we characterize Wilson as a permissive user of Gormley's car. IGF cites no authority to support its repossession theory and there is no evidence of a repossession agreement between the parties. Therefore, § 301.215 does not apply to this case.

Because we find Wilson was a permissive user and Gormley was still the titled owner of the car on March 4, 1992, our inquiry now focuses on whether IGF's insurance policy extended coverage to Wilson at the time of the accident. The language of IGF's policy is plain and unambiguous. The policy provides coverage for any person using the covered auto who becomes legally responsible because of an auto accident. Wilson, as a permissive driver of the covered auto, clearly falls within the scope of this policy. Furthermore, the Motor Vehicle Financial Responsibility Law, § 303.190.2(2) RSMo 1986, requires automobile liability policies insure permissive users. *Shelter Mut. Ins. Co. v. Haney,* 824 S.W.2d 949, 954 (Mo.App.S.D.1992) (citing *Halpin v. American Family Mut. Ins. Co.,* 823 S.W.2d 479, 481 (Mo. banc 1992)).

We find Gormley, as the titled owner at the time of the accident, did have an insurable interest in the car. We also find Wilson, as a permissive user of Gormley's car, was covered by IGF's liability policy. Therefore, IGF had the duty of primary coverage to Wilson for the automobile collision on March 4, 1992.

The trial court's sustaining Liberty Mutual's motion for summary judgment is affirmed.

SMITH, P.J., and PUDLOWSKI, J., concur.