**Lowell K. WOOD, Plaintiff–Appellant,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, Defendant–Respondent.**

No. 73693.

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 8, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 6, 1998.

Application for Transfer Denied Dec. 22, 1998.

44

Gregory F. Hoffman, Millar, Schaefer, Hoffmann & Robertson, St. Louis, for plaintiff–appellant.

William F. James, Lindsay A. Dibler, Wuestling & James, St. Louis, for defendant–respondent.

HOFF, Judge.

Lowell K. Wood (Insured) appeals from the judgment entered in favor of Safeco Insurance Company of America (Insurer) upon the granting of Insurer's motion for summary judgment in this damages action arising out of Insurer's duty to defend under a personal umbrella policy. We reverse and remand with directions, upon finding the policy covers the negligent misrepresentation claims in the underlying lawsuits and Insurer waived its right to assert a policy exclusion applied to those claims.

### 1. *Introduction*

Insured owned real estate along the Big River in Missouri (the property). He sold the property to another (Buyer). Subsequent to the sale, the property flooded twice. Buyer sued Insured for alleged misrepresentations Insured made to Buyer, prior to the sale, regarding flooding of the property.

In the first lawsuit, filed in March 1994, Buyer alleged Insured was liable for intentional misrepresentations (Count II of the petition) and negligent misrepresentations (Count III of the petition). Buyer dismissed that lawsuit without prejudice. Buyer then filed another lawsuit based upon the same claims of fraud due to intentional misrepresentations (Count I of the petition) and negligent misrepresentations (Count II of the petition) against Insured. That lawsuit was dismissed with prejudice.

Insurer refused to defend Insured against either lawsuit based upon the terms of a personal umbrella policy (policy) Insurer issued to Insured.

After the dismissal of Buyer's second lawsuit, Insured filed this damages action seeking indemnification from Insurer for its failure to defend Insured under the terms of the policy.[1] Insured alleged the policy covered the misrepresentation claims pursued by Buyer and, in its letter advising Insured it refused to assume the defense of Buyer's litigation, Insurer had failed to address Buyer's negligent misrepresentation claim(s). Insured sought an award of the $46,102.64 in attorney's fees and costs he incurred defending himself in Buyer's litigation. Insured also contended Insurer was liable for the amount provided in Section 375.420 RSMo 1986[2] because Insurer's refusal to defend was vexatious and without reasonable cause. Finally, Insured requested an award of reasonable attorney's fees and costs.

In its response to Insured's petition, Insurer stated in relevant part: "there is no coverage provided to [Insured], under the policy in question, because of the definitions contained in the policy concerning bodily injury, personal injury, property damage, occurrence and intentional acts."

The parties filed cross-motions for summary judgment. In its successful motion, Insurer argued the policy did not require it to defend Insured against Buyer's negligent and intentional misrepresentation claims for two reasons. First, those claims were not "occurrences" required for coverage by the policy. Second, those claims were excluded from policy coverage by the policy's "expected or intended" acts exclusion. Insurer further urged the policy expressly excluded coverage for any punitive damages claim in the underlying litigation; and an award under

---

1. This action is based on the principle that an insurer becomes liable for damages flowing from a refusal to defend an insured, including attorney fees incurred by the insured in defending the underlying litigation. *Fuller v. Lloyd,* 714 S.W.2d 698, 702 (Mo.App. W.D.1986); *Centenni-*

*al State Bank v. S.E.K. Constr. Co.,* 518 S.W.2d 143, 151 (Mo.App. W.D.1974).

2. All subsequent statutory references are to RSMo 1986.

Section 375.420 was not warranted because Insurer's refusal to defend was reasonable.

The trial court granted judgment in favor of Insurer and denied Insured's motion for summary judgment. With respect to the fraud claims, the trial court found the language of the "expected or intended" act exclusion controlling. With respect to the negligent misrepresentation claims, the trial court found: Buyer had pleaded the elements of the claim as set forth in *Chubb Group of Ins. Cos. v. C.F. Murphy & Assocs., Inc.*, 656 S.W.2d 766 (Mo.App. W.D.1983); a cause of action for negligent misrepresentation exists in Missouri; this cause of action includes a "requirement of 'intent' to provide information on which reliance is sought [and] such 'intent' is not an 'accident' or 'occurr[e]nce' for which there was coverage under the ... policy." Thus, the trial court concluded, Insurer did not have a duty to defend under the policy issued to Insured and Insurer was entitled to judgment as a matter of law. This appeal followed.

In his first point, Insured contends the trial court erred in concluding a fraudulent misrepresentation claim is an intentional tort and therefore falls within the policy's "expected or intended" act exclusion. Insured argues in his second point that the trial court erred in concluding a negligent misrepresentation claim contains the same element of intent as the fraudulent misrepresentation claim and is, therefore, not an "occurrence" or "accident" for purposes of the policy's coverage. Insured also urges, in his third point, that the trial court erred in determining Insurer had not waived its right to assert the "expected or intended" act exclusion applied to a negligent misrepresentation claim. Finally, in point four, Insured argues the trial court erred in finding Insured was not entitled to recover statutory damages under Section 375.420 for Insurer's allegedly vexatious refusal to defend.

## 2. *Standard of Review*

Appellate review of a grant of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). A summary judgment movant has the burden "to show a right to judgment flowing from [material] facts about which there is no genuine dispute." *Id.* at 378. Whether or not summary judgment was proper is a question of law, and we need not defer to the trial court's order granting summary judgment. *Id.* at 376. We view the record in the light most favorable to the party against whom judgment was entered, and take facts set forth in affidavits and otherwise in support of the motion as true unless they are contradicted by the non-moving party's response. *Id.* Importantly, "[t]he key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *Id.* at 380; *Combined Communications Corp. v. City of Bridgeton*, 939 S.W.2d 460, 463 (Mo.App. E.D.1996); *Liberty Mut. Ins. Co. v. IGF Ins. Co.*, 888 S.W.2d 757, 758 (Mo.App. E.D.1994); *United States Fidelity & Guar. v. Drazic*, 877 S.W.2d 140, 142 (Mo.App. E.D.1994).

Here there are no disputed material facts. Thus, we must decide whether Insurer has shown as a matter of law its entitlement to judgment on Insured's damages claim for Insurer's failure to defend.

## 3. *Insurer's Duty to Defend*

■ An insurer's duty to defend exists when the petition in the underlying action states some grounds of liability covered by its insurance policy. *Butters v. City of Independence*, 513 S.W.2d 418, 424 (Mo.1974). Therefore, we must compare "the language of the insurance contract and the allegations of the petition in the action brought by the person injured or damaged. If the complaint alleges facts which state a claim potentially within the policy's coverage, there is a duty to defend." *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d 205, 210 (Mo.App.E.D.1995) (citation omitted); *see also Bonner v. Automobile Club Inter–Ins. Exch.*, 899 S.W.2d 925, 929 (Mo.App. E.D. 1995). There is no duty to defend, however, where the underlying claim is outside the coverage of the insurance policy. *McDonough v. Liberty Mut. Ins. Co.*, 921 S.W.2d 90, 94 (Mo.App. E.D.1996) (finding insurer had no duty to defend upon determining, in relevant part, that (1) the homeowners policy did

not provide coverage either for the equitable relief sought in the underlying lawsuit, or for acts of governing bodies which were the basis for the underlying action; and (2) the terms of the umbrella policy provided no coverage for loss of use of property,[3] which was the alleged property damage in the underlying action), *abrogated in part*,[4] *Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 509 (Mo. banc 1997).

Because we find the negligent misrepresentation claims are potentially covered by the policy, we will not address the policy's coverage of the fraudulent misrepresentation claims. "The presence of some insured claims in the [underlying] petition gives rise to a duty to defend, even though uninsured claims or claims beyond the coverage may also be present." *Scottsdale Ins. Co. v. Ratliff*, 927 S.W.2d 531, 534 (Mo.App. E.D.1996).

With respect to the negligent misrepresentation claims against Insured in the underlying lawsuits,[5] Buyer alleged Insured "failed to exercise ordinary and reasonable care" in making representations that "the residence was not located in a flood plain, had never flooded, and would not flood." In setting forth the representations in more detail, Buyer specifically alleged Insured stated:

(a) That the residence was not located in the flood plain;

(b) That the residence: (i) had never had water in it; (ii) was definitely out of any danger of flooding; and (iii) had never flooded;

(c) That only a small portion of the land purchased (i.e., approximately five (5) acres located immediately adjacent to the Big River) was actually located in a flood plain;

(d) That, at most, the Big River would rise only high enough to cover the approximate five (5) acres of ground located immediately adjacent to the river;

(e) That the provision in the Sale Contract which states that the property is located in a flood plain was a formality and necessary only because the above-described five (5) acres were located in the flood plain;

(f) That a creek bed which ran near the residence and under the driveway to the residence would not pose a risk of water getting into the residence or garage; and

(g) That a small amount of flood insurance was advisable only in order to provide coverage for the contents of a small outbuilding located on the property in the event that such contents might get damp.

Buyer also alleged that, if Buyer had been advised of the true facts, Buyer would not have purchased the residence and property. Furthermore, in the first lawsuit, Buyer alleged that, in reliance on the representations, she "assumed the [Insureds'] existing flood insurance policy (which provided minimal insurance coverage) rather than obtaining full and comprehensive flood insurance upon the property and residence." The flooding that occurred after the purchase allegedly encompassed "virtually all of [the] property, including the residence and newly constructed horse barn/riding arena, both of which at one time had approximately three to four feet of water throughout them." In each of Buyer's claims against Insured, Buyer alleged she incurred undetermined damages exceeding $350,000, and she sought damages in excess of $15,000.00, plus her costs.

The policy, in relevant part, provides as follows:

## DEFINITIONS

\* \* \*

7. **"Property damage"** means physical injury to or destruction of tangible property including loss of its use.

---

**3.** The umbrella policy in *McDonough* defined "property damage" as "(a) injury to or destruction of tangible property; (b) injury to intangible property sustained by an organization as the result of eviction, malicious persecution, libel, slander, or defamation." *McDonough*, 921 S.W.2d at 92.

**4.** The Missouri Supreme Court in *Farmland Indus., Inc.* abrogated *McDonough* only as to the

finding equitable relief was not encompassed by the policy's "damages" term.

**5.** A party additional to Insured was named as a defendant in each of the lawsuits pursued by Buyer. The claims and any insurance coverage pertaining to those defendants are not at issue in this appeal and will not be discussed by this Court.

8. **"Retained limit"** means either:

    a. the limit of liability specified in the Schedule of Underlying Insurance of the Declarations for each underlying policy, plus the limit of any other underlying insurance collectible by the "insured"; or

    b. the amount shown under **Retained Limit** in the Declarations, as the result of an occurrence not covered by underlying policies of insurance.

\* \* \*

10. **"Occurrence"** means:

    a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the coverage period, in:

      (1) "personal injury"; or

      (2) "property damage";

\* \* \*

## COVERAGES

### PERSONAL LIABILITY

We will pay on behalf of the "insured" for the "ultimate net loss" in excess of the "retained limit" which the "insured" is legally obligated to pay as damages because of covered "personal injury" or "property damage."

### DEFENSE COVERAGE

When a claim which is covered by this policy, is made against any "insured," and such claim is not covered by the "insured's" underlying policies stated in the declarations or by any other underlying insurance available for the "insured," we will, subject to the "retained limits":

1. Defend any suit against any "insured," even if it is groundless or fraudulent. And we will investigate, negotiate and settle on behalf of the "insured" any claim or suit as we deem appropriate.

\* \* \*

### EXCLUSIONS

This policy does not apply to:

\* \* \*

11. Any act or damage which is expected or intended by any "insured," or which is the foreseeable result of an act or omission intended by any "insured," which causes "personal injury" or "property damage."

■ What coverage is provided by these terms? Insurer contends that, under the circumstances of this case, the policy only covers "occurrences" as that term is defined in the policy, whereas Insured argues the coverage of the policy does not require "occurrences."

Interpretation of the meaning of an insurance policy is a question of law for the trial court. *McDonough,* 921 S.W.2d at 93. We give insurance policy terms their "ordinary meaning, unless it plainly appears that a technical meaning was intended. The ordinary meaning of a term is the meaning that the average layperson would reasonably understand." *Farmland Indus., Inc.,* 941 S.W.2d at 508 (citations omitted). The policy is enforced as written unless there is an ambiguity or a statute or public policy requires otherwise. *McDonough,* 921 S.W.2d at 93. An ambiguity arises when the policy language reasonably and fairly is open to different constructions or there is " 'duplicity, indistinctness or uncertainty in meaning.' " *Id.* (quoting *Allianz Ins. Co.,* 895 S.W.2d at 209).

Neither the policy's personal liability and defense coverage provisions nor the policy's definition of "property damage" expressly include a requirement that an insured's liability for damages arise from an "occurrence" as defined by the policy. We find, however, that the application of the policy's second definition of "retained limit" to the coverage provisions requires that Insured's liability for damages arise from an "occurrence" as defined in the policy before the policy may be found to cover Buyer's claims.

By their terms, both the personal liability and the defense coverage provisions of the policy are subject to the "retained limit" as defined in the policy. The personal liability coverage provision only provides coverage for specified amounts over the "retained limit" which insured has a legal obligation to pay

as the result of "personal injury" or "property damage" as defined by the policy. The defense coverage provision only provides an insured with a defense against any suit, even if groundless or fraudulent, when no other insurance coverage is available. Significantly, the defense coverage provision is explicitly "subject to the 'retained limits.'"

The policy defines "retained limit" in two alternative ways. The first alternative applies when there is underlying insurance. The second alternative applies when an insured's liability is "the result of an occurrence not covered by underlying policies of insurance." This distinction is not unusual in light of the fact an umbrella policy may cover risks not covered by the underlying policy. *Planet Ins. Co. v. Ertz*, 920 S.W.2d 591, 593–94 (Mo.App. W.D.1996).

Here, it is undisputed that, with respect to Buyer's litigation, Insured has available to him no insurance other than the policy at issue in this case. Therefore, the second alternative definition of "retained limit" becomes part of the policy's coverage provisions and those provisions then clearly require an "occurrence" before Insurer must provide either the personal liability or the defense coverage of the policy.

4. *Negligence Claim as an "Occurrence"*

■ The key question here is whether a liability policy restricting coverage to an "occurrence," defined as an "accident," encompasses a negligence claim. Answering affirmatively, we find that when a liability policy defines "occurrence" as meaning " 'accident' ... Missouri courts [consider this] to mean injury caused by the negligence of the insured." *Great Am. Ins. Co. v. Pearl Paint Co.*, 703 S.W.2d 601, 602 (Mo.App. E.D.1986) (citing *N.W. Elec. Power Coop., Inc. v. American Motorists Ins. Co.*, 451 S.W.2d 356 (Mo. App. W.D.1969)).

In *N.W. Elec. Power Coop., Inc.*, the Western District has considered coverage of a general comprehensive liability policy that did not define "accident" for purposes of the types of claims asserted against insured. *N.W. Elec. Power Coop., Inc.*, 451 S.W.2d at 362–63. The relevant coverage provision stated the insurer would " 'pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, *caused by accident.*' " *Id.* at 359. The Western District rejected a definition of "accident" that would exclude "damage resulting from negligence" and stated in relevant part:

"In its more general sense the term ('accident') does not exclude human fault called negligence, but is recognized as an occurrence arising from the carelessness of men, ... * * * ". 1 C.J.S. Accident pp.439, 440; 38 Am.Jur., Negligence, p. 647. When used without restriction in liability policies, "accident" has been held not to exclude injuries resulting from ordinary, or even gross, negligence. Appelman, Insurance Law and Practice, Vol. 7A, pps.4–8

*Id.* at 363, 364. The Western District ultimately held: "the definition of 'injury to or destruction of property * * * caused by accident', as used in [the] policy, ... mean[s] injury to or destruction of property not intentionally inflicted but caused by the negligence of the insured." *Id.* at 364.

In part, the Western District had relied on the Southern District's decision in *White v. Smith*, 440 S.W.2d 497 (Mo.App. S.D.1969). *N.W. Elec. Power Coop., Inc.*, 451 S.W.2d at 362. In the *White* case the Southern District, in relevant part, expressly aligned itself with the "larger number of jurisdictions [holding] that damages not intentionally inflicted but resulting from an insured's negligence (and thus constructively foreseeable to him) may be 'caused by accident' and within the coverage afforded by a liability insurance policy." *White*, 440 S.W.2d at 508.

Additionally, we have held a termite inspection company's insurer had to defend the company against homeowners' claims that the company negligently and recklessly inspected the home prior to its purchase by the homeowners. *Scottsdale Ins. Co.*, 927 S.W.2d at 532. The policy defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* The trial

court found the termite inspection and subsequently discovered termite damage to the home were not an occurrence within the meaning of the general liability policy. *Id.* We reversed due, in significant part, to case law from other jurisdictions finding that a negligent termite inspection resulting in subsequently discovered termite damage constitutes an "occurrence" for purposes of liability insurance. *Id.* at 533.

Although *Scottsdale Ins. Co.* was limited to a negligent termite inspection situation, we conclude that Missouri authority would allow negligent conduct to be encompassed by a liability policy providing coverage for an "occurrence" defined as an "accident." This comports with a reasonable person's expectation of liability coverage. A "liability policy is designed to protect the insured from fortuitous injury caused by his actions. If the injury occurs because of carelessness of the insured, he reasonably expects the injury to be covered." *Farm Bureau Town & Country Ins. Co. v. Turnbo,* 740 S.W.2d 232, 236 (Mo.App. E.D.1987).

### 5. Negligent Misrepresentation Claim as an "Occurrence"

■ The question then remains whether a negligent misrepresentation claim may be an "occurrence" for purposes of liability insurance. While we have been directed to, and can find, no Missouri cases addressing this issue, courts in other jurisdictions have discussed this issue.

### A. Maryland Approach

The highest court of Maryland recently concluded that negligent misrepresentation constituted an "occurrence" for purposes of a farm owner's general liability policy (farm owner's policy). *Sheets v. Brethren Mut. Ins. Co.,* 342 Md. 634, 679 A.2d 540, 545–51 (1996). The farm owner's policy defined "occurrence" as " 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions' " but did not define "accident." *Id.* at 545 (quoting from farm owner's policy at issue in the case). The farm owners sold their farm. *Id.* at 541. Shortly after the purchasers and their nine children moved in the septic sys-

tem leaked, requiring replacement of the system. *Id.* Purchasers then sued the farm owners for intentional and negligent misrepresentations made prior to the sale about the "good working condition" of the farm's septic system. *Id.* The farm owners' insurer refused to defend them on the grounds the policy did not cover misrepresentation torts. *Id.* at 542. The farm owners then filed a declaratory judgment action and the trial court granted the insurer's summary judgment motion. *Id.* The Maryland Court of Appeals reversed and remanded for entry of summary judgment in favor of the farm owners. *Id.* at 541.

With respect to whether or not there was an "occurrence," the Maryland Court of Appeals first analyzed case law from other jurisdictions and from Maryland to discern "whether any form of negligence may be considered an accident under a liability insurance policy." *Id.* at 546, 546–50. The court concluded, "when a negligent act causes damage that is unforeseen or unexpected by the insured, the act is an 'accident' under a general liability policy." *Id.* at 548. This, the court noted, conforms to the meaning a reasonable layperson would attach to the term "accident." *Id.* at 549. The court further stated:

> If we were to adopt an objective standard and hold that the term "accident" as used in liability insurance policies excludes coverage for damage that *should have* been foreseen or expected by the insured, such insurance policies would be rendered all but meaningless. Under such an interpretation, the policy would provide no coverage for negligent acts resulting in objectively foreseeable or expectable damage. Only acts of negligence resulting in objectively *un*foreseeable or *un*expectable damage would be covered. Of course, under basic principles of tort law, the insured is unlikely to be held liable for unforeseeable or unexpectable damages resulting from his negligence. Thus, interpreting "accident" as encompassing only negligent acts resulting in unforeseeable and unexpectable damages would leave the insured covered against only those damages for which he or she is not likely to be held

liable. We decline to adopt such a restrictive construction of the term accident. *Id.* at 549.

The court then discussed cases from other jurisdictions that had addressed whether negligent misrepresentation can constitute an accident. *Id.* at 550–51. The cases referenced and followed by the Maryland Court of Appeals as finding such a claim can constitute an accident for liability insurance purposes were: *SL Indus., Inc. v. American Motorists Ins. Co.*, 128 N.J. 188, 607 A.2d 1266, 1276–77 (1992);[6] *Universal Underwriters v. Youngblood*, 549 So.2d 76, 78–79 (Ala. 1989);[7] and *First Newton Nat'l Bank v. General Casualty Co.*, 426 N.W.2d 618 (Iowa 1988).[8] *Sheets*, 679 A.2d at 550.

The court in *Sheets* distinguished cases from other jurisdictions that found negligent misrepresentation is not an accident or occurrence. *Id.* at 550–51. In discussing what it called the "leading case" on this perspective, *Safeco Ins. Co. of Am. v. Andrews*, 915 F.2d 500 (9th Cir.1990) (applying California law), the Maryland Court of Appeals noted only that the court "did not explain its reasoning or cite any authority for th[e] proposition." *Sheets*, 679 A.2d at 550.[9]

In discussing the California cases that have relied on the decision in *Safeco Ins. Co. of Am.*, the Maryland Court of Appeals stated they found "negligent misrepresentation is associated more with fraud than with ordinary negligence and hence cannot be considered an accidental, unintended occurrence."

*Sheets*, 679 A.2d at 550, citing *American States Ins. Co. v. Canyon Creek*, 786 F.Supp. 821, 825 (N.D.Cal.1991) and *Chatton v. National Union Fire Ins. Co.*, 10 Cal.App.4th 846, 13 Cal.Rptr.2d 318, 328 (1st Dist.1992). The Maryland Court of Appeals found that rationale "may not apply in Maryland" because that state had not expanded the tort of fraud to include negligent or grossly negligent misrepresentations. *Sheets*, 679 A.2d at 550–51.

Other cases, the Maryland Court of Appeals observed, find a negligent misrepresentation is not an accident due to "the insured's intent to induce reliance on the false statement." *Id.* at 551, citing *Tschimperle v. Aetna Casualty & Sur. Co.*, 529 N.W.2d 421 (Minn.App.1995) and *First Wyoming Bank, N.A. v. Continental Ins. Co.*, 860 P.2d 1094, 1100 (Wyo.1993). While noting that the tort of negligent misrepresentation in Maryland also includes a requirement that the insured intend the statement will be acted upon by the third party, the Maryland Court of Appeals found "the falsity in the statement and the resulting injury or damage may be accidental. We prefer to follow those cases that treat negligent misrepresentation like other forms of negligence, which are covered as accidents if the insured did not expect or foresee the resulting damage." *Sheets*, 679 A.2d at 551. The court then analyzed the allegations in the underlying litigation and concluded:

---

**6.** The court in *Sheets* noted the New Jersey Supreme Court observed that " '[c]ourts generally have held that although the insurer must defend an insured who is accused of reckless, negligent, or innocent misrepresentations, no defense is required when the insured is accused of intentional misrepresentations.' " *Sheets*, 679 A.2d at 550 (quoting *SL Indus., Inc.*, 607 A.2d at 1276–77).

**7.** The court in *Sheets* noted the Alabama Supreme Court upheld the insurer's duty to defend an insured against a negligent misrepresentation claim and stated " '[t]he term "accident" does not exclude events that occur through negligence' and ... '[a]ctions for innocent or reckless misrepresentation have been held to be covered' as an occurrence under similar insurance policies." *Sheets*, 679 A.2d at 550 (alterations in original) (quoting *Youngblood*, 549 So.2d at 78 and 79).

**8.** The Maryland Court of Appeals noted the Iowa Supreme Court found an insurer had a duty to defend an insured sued for negligent misrepresentation in the financing of real estate and had "stated '[t]he very definition of "negligent misrepresentation" connotes negligent rather than intentional conduct.' " *Sheets*, 679 A.2d at 550 (alteration in original) (quoting *First Newton Nat'l Bank*, 426 N.W.2d at 625–26).

**9.** The *Safeco Ins. Co. of Am.* decision regarding whether or not negligent misrepresentations constitute an occurrence for the liability policy states: "[t]he cause of the damage was [insured's] alleged misrepresentations, which are not an 'occurrence' or a 'peril insured against' under the terms of the policy." *Safeco Ins. Co. of Am.*, 915 F.2d at 502.

it is possible that the [farm owners] did not foresee or expect the damage resulting from their alleged negligent or careless assertion that the septic system worked properly. It is conceivable that the [farm owners] never experienced a problem with the system while they were living on the farm with their two children and therefore, at the time they represented that the system was in good working order, did not anticipate that the [purchasers] would encounter any difficulties. We therefore hold that the resulting damage fits within our definition of accident because it was an event that may have taken place without the [farm owners'] foresight or expectation. Thus, the claim for negligent misrepresentation is at least potentially covered under the insurance policy as an "occurrence."

*Id.*

Earlier in its opinion, the Maryland Court of Appeals had also held (1) the alleged damage to the septic system fell within the policy's "property damage" definition encompassing "loss of use"; and (2) the obligation to defend could not be avoided based upon a lack of causation so long as the allegations in the underlying petition show the claim is potentially covered. *Id.* at 544. With respect to the latter conclusion, the court specifically stated:

> [the insurer] should have defended the suit filed against its policy holder even if that suit on its face was frivolous in the allegation of a causal connection between the [insureds'] negligence and the [purchasers'] property damage. Rather than filing a motion for summary judgment against the [insureds, the insurer] should have filed a motion *on behalf of* the [insureds] against the [purchasers] on the ground of lack of causal nexus.

\* \* \*

... Any motion for summary judgment on the basis that a tort suit fails to allege an adequate claim of causation should be made by the insurer against the tort claimant, not against the insured. The fact that the allegation of causation is groundless does not relieve the insurance carrier from defending its insured as long as some causal nexus is at least alleged.

*Id.* at 544–45.

### B. *Our Approach*

We find persuasive the Maryland Court of Appeals' well-reasoned determination in *Sheets* that a negligent misrepresentation claim is covered by a liability insurance policy providing coverage for an "occurrence" defined as an "accident." [10] Based on that decision, we find the negligent misrepresentation claims against Insured covered by the policy at issue here.

In discussing whether or not a negligent misrepresentation claim contained an "intent element" taking it outside the "accident" or "occurrence" requirements of the policy, the trial court here cited *Safeco Ins. Co. of Am., supra; Miller v. Western General Agency, Inc.,* 41 Cal.App.4th 1144, 49 Cal.Rptr.2d 55 (1996); *First Wyoming Bank, N.A., supra;* and *Dykstra v. Foremost Ins. Co.,* 14 Cal. App.4th 361, 17 Cal.Rptr.2d 543 (1993). We find these cases unpersuasive. First, as the Maryland court observed, the *Safeco Ins. Co. of Am.* case is not convincing due to its summary explanation of its decision regarding coverage of the negligent misrepresentation claims. As to the other cases cited by the trial court, we find applicable here the perspective of the Maryland Court of Appeals that, while the claim includes an element that the insured intend to induce reliance on the misrepresentation, "the falsity in the statement and the resulting injury or damage may be accidental" and the claim should be treated "like other forms of negligence." *Sheets,* 679 A.2d at 551. This perspective is supported by the fact that, to the extent this jurisdiction recognizes a cause of action for negligent misrepresentation,[11] such

---

**10.** We are aware of the decision in *Farr v. Designer Phosphate and Premix Int'l, Inc.,* 253 Neb. 201, 570 N.W.2d 320 (1997). We find that case both distinguishable from this case and unpersuasive.

**11.** In Missouri, a negligent misrepresentation claim requires proof

(1) that speaker [here, Insured] supplied information in the course of his business or because of some other pecuniary interest; (2)

a claim is distinguishable from an intentional misrepresentation claim [12] due to the absence of an intent to deceive. The Western District has most clearly pointed this out in *Mark Twain Plaza Bank v. Lowell H. Listrom & Co.*, 714 S.W.2d 859 (Mo.App. W.D. 1986). In that case, the Western District explained: "liability under [the negligent misrepresentation] doctrine is more restricted than for fraudulent misrepresentation in that there is no requirement for intent to deceive; it is grounded 'upon negligence of the actor in failing to exercise reasonable care or competence in supplying correct information.' Restatement (Second) of Torts Section 552, comment a." *Id.* at 865.

■ In light of our adoption of the reasoning and holdings of the Maryland Court of Appeals in *Sheets*, we must now consider whether the allegations here are sufficient to find the negligent misrepresentation claims potentially covered by the policy. As the trial court found, Buyer's allegations satisfy the elements required to establish a negligent misrepresentation claim. The petitions allege, in part, that as a result of the misrepresentations Buyer was damaged and the alleged damage was the subsequent flooding of property Buyer would not have purchased absent the misrepresentations. Whether or not the flooding damage is causally related to the misrepresentations should have been pursued by Insurer on behalf of Insured in Buyer's litigation, rather than against Insured in this litigation. *See Sheets*, 679 A.2d at 544–45. Moreover, the allegations of the petitions regarding the three to four feet of

flood water within the residence and riding arena sufficiently implicate the "loss of use" provision of the policy's definition of "property damage." *See id.* at 544. Therefore, we find Buyer's negligent misrepresentation claims are potentially covered by the umbrella policy issued by Insurer to Insured and, under that policy, Insurer had a duty to defend Insured against Buyer's claims.

### 6. *"Expected or Intended" Acts Exclusion*

■ With respect to Insurer's argument, in its successful summary judgment motion, that the policy's "expected or intended" acts exclusion precludes coverage of the negligent misrepresentation claims, we disagree based upon Insurer's waiver of that defense.

■ If an insurer denies liability for a claim against an insured, specifying the grounds for that denial, the insurer may have waived or may be estopped from subsequently raising other grounds for denying liability under the policy. *See Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384 (Mo. banc 1989). The Missouri Supreme Court has clarified that "in the absence of either (1) an express waiver by the insurer or (2) conduct which clearly and unequivocally shows a purpose by the insurer to relinquish a contractual right, the insured must show prejudice before the rule may be invoked." *Id.* at 388.

In this case, upon learning of Buyer's first lawsuit, Insurer sent Insured a letter denying coverage and distinguishing between the intentional misrepresentation claim in Count II and the negligent misrepresentation claim

---

that, due to speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) that speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) that listener justifiably relied on the information[;] and (5) that as a result of listener's reliance on the statement, he/she suffered a pecuniary loss. *Colgan v. Washington Realty Co.*, 879 S.W.2d 686, 689 (Mo.App. E.D.1994). The theory is "that the *speaker* believed that the information supplied was correct, but was negligent in so believing." *Id.*

**12.** A fraudulent (or intentional) misrepresentation claim requires proof of each of the following elements:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or his ignorance of its truth; (5) the speaker's intent that his representation should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely thereon; [and] (9) the hearer's consequent and proximately caused injury. *Clark v. Olson*, 726 S.W.2d 718, 719 (Mo. banc 1987). The Western District acknowledged "[t]he theories of intentional tort and of negligence are mutually exclusive." *Dobbins v. Kramer*, 780 S.W.2d 717, 719 (Mo.App. W.D. 1989).

in Count III of the petition in that lawsuit. In relevant part, the letter advised:

> Clearly, [Buyer's] claimed damages resulting from alleged intentional misrepresentations are excluded from coverage under the ... polic[y]. Count II is a claim for damages suffered as a result of intentional acts, and, thus, is excluded from coverage. [Insurer] has no duty to defend or indemnify you for claims arising out of this count.

Insurer relies on the first sentence to support its position that it may pursue the "expected or intended" acts exclusion as a defense to coverage of the negligent misrepresentation claims. We disagree. The very next two sentences explicitly limit to only the intentional misrepresentation claim in Count II the Insurer's denial of coverage and refusal to defend based upon this exclusion. While the Insurer did not expressly waive the "expected or intended" acts exclusion with respect to the negligent misrepresentation claim, the statements in this letter clearly and unequivocally show Insurer relinquished use of that exclusion with respect to the negligent misrepresentation claim set forth as Count III in Buyer's first lawsuit. Accordingly, we find Insurer waived application of the "expected and intended" acts exclusion to Buyer's negligent misrepresentation claims.[13]

■ Even if we should consider the merits of Insurer's position that the "expected or intended" acts exclusion precludes coverage of the negligent misrepresentation claims, we conclude the coverage is not precluded because Insured no more than negligently expected or foresaw the flooding damage asserted by Buyer. For purposes of this exclusion,

> "Intend" means the insured desires to cause the consequences of his act or believes the consequences are substantially certain to result. "Expect" means the insured realized or should have realized there was a strong probability the conse-

quences in question would result from his acts.

*Farm Bureau Town & Country Ins. Co.*, 740 S.W.2d at 236. Missouri courts have found that an insured's reckless acts may not be enough to find an injury was expected by insured. *American Family Mut. Ins. v. Pacchetti*, 808 S.W.2d 369, 371 (Mo. banc 1991); *State Farm Fire and Casualty Co. v. Schroeder*, 951 S.W.2d 708, 709 (Mo.App. E.D.1997). Here, we are unable to say that Insured's acts were even recklessly injurious. As the Maryland Court of Appeals stated in *Sheets*, "it is conceivable that [Insured] never experienced a problem with [flooding of the residence] while [he was] living on the [property] and therefore, at the time [he] represented [the lack of flooding of the residence, he] did not anticipate that [Buyer] would encounter any difficulties." *Sheets*, 679 A.2d at 551. The policy's "expected or intended" acts exclusion does not preclude coverage of the *negligent* misrepresentation claims here.

### 7. Punitive Damages Claim

To the extent Insurer challenged the policy's coverage of any claim for punitive damages pursued by Buyer, we need not address the merits of this challenge. First, Buyer requested punitive damages only with respect to the intentional misrepresentation claims, which we are not expressly addressing. Furthermore, we have determined there is coverage of and a duty to defend arising out of Buyer's negligent misrepresentation claims. Therefore, we need not also address whether or not there is coverage of and a duty to defend arising out of any request for punitive damages. *See Scottsdale Ins. Co.*, 927 S.W.2d at 534.

### 8. Vexatious Refusal to Pay

Finally, Insurer argued in its successful motion for summary judgment that it is not liable for a vexatious refusal to defend because its denial of coverage was not willful and without reasonable cause.

---

**13.** Although Insurer may, for similar reasons, have waived its position that Buyer's negligent misrepresentation claims do not constitute "occurrences" for purposes of policy coverage, we properly ascertained whether or not the policy covered Buyer's negligent misrepresentation claims because "[w]aiver and estoppel may not be employed to create coverage where it otherwise d[oes] not exist." *Shelter Gen. Ins. Co. v. Siegler*, 945 S.W.2d 24, 27 (Mo.App. E.D.1997).

■ The test for a vexatious refusal claim is not the final resolution of the coverage issues but how willful and unreasonable the insurer's refusal was as the facts appeared to a reasonable and prudent person at the time the insurer was asked for coverage. *Pace Properties, Inc. v. American Mfrs. Mut. Ins. Co.,* 918 S.W.2d 883, 888 (Mo.App. E.D.1996); *Katz v. Commercial Standard Ins. Co.,* 647 S.W.2d 831, 839 (Mo.App. W.D.1983). There may be no vexatious refusal where the insurer has reasonable cause to believe and does believe there is no liability under its policy and it has a meritorious defense. *Groves v. State Farm Mut. Auto. Ins. Co.,* 540 S.W.2d 39, 42 (Mo. banc 1976).

■ "When there is an open question of law or fact the insurer may insist upon a judicial determination of those questions without being penalized." *Oliver v. Cameron Mut. Ins. Co.,* 866 S.W.2d 865, 870 (Mo.App. E.D.1993). A litigable issue exists, for instance, when there are no Missouri cases directly addressing the coverage issue. *Webb v. Hartford Casualty Ins. Co.,* 956 S.W.2d 272, 276 (Mo.App. W.D.1998). A subsequent court decision adverse to the insurer's position is not a sufficient reason for imposing the penalty. *Groves,* 540 S.W.2d at 42. The existence of a litigable issue will, however, not preclude a penalty if the insurer's attitude is shown to be vexatious and recalcitrant. *Pace Properties, Inc.,* 918 S.W.2d at 888.

■ Here, at the time Insured sought coverage of the claims in Buyer's first lawsuit, Insurer had available to it no Missouri case law addressing whether or not negligent misrepresentation claims are encompassed by any type of liability policy, much less a policy such as the one at issue here. Moreover, Insurer had available to it case law from other jurisdictions indicating both that such claims are covered and such claims are not covered by liability policies. Thus, Insurer could reasonably conclude it had a litigable issue regarding coverage of the claims in Buyer's litigation. Additionally, Insured has not presented any evidence of a vexatious and recalcitrant attitude on the part of Insurer at the time Insurer refused to cover Buyer's litigation, and the record does not show a genuine issue of material fact regarding any such attitude. Under the circumstances, summary judgment in favor of Insurer on Insured's vexatious refusal to defend claim was proper.

Due to our *de novo* consideration of all aspects of Insurer's motion for summary judgment, we do not need to address further the merits of points three and four on appeal.

### 9. *Conclusion*

■ Having found there is coverage of the negligent misrepresentation claims and a duty to defend under the policy, we must consider the award to Insured of the attorney's fees and costs incurred in defending Buyer's litigation. "[A]n insurance company is liable [for] attorney fees [and] expenses ... where it refuses to defend an insured who is in fact covered. This is true even though the company acts in good faith and has reasonable ground to believe there is no coverage under the policy." *Landie v. Century Indem. Co.,* 390 S.W.2d 558, 562 (Mo. App. W.D.1965). Due to its resolution of the summary judgment in favor of Insurer and its denial of Insured's summary judgment motion, the trial court has not yet addressed an award to Insured of the fees and expenses Insured incurred in the underlying litigation. This issue is remanded to the trial court for determination.

Summary judgment in favor of Insured is affirmed in part as to Insured's vexatious refusal to pay claim and is otherwise reversed. This matter is remanded to the trial court for entry of summary judgment in favor of Insured on the issues of coverage and Insurer's duty to defend. On remand, the trial court shall also conduct further proceedings on the award to Insured of attorney's fees and expenses incurred by Insured in defending Buyer's litigation, and enter judgment against Insurer accordingly.

ROBERT G. DOWD, Jr., P.J., and SIMON, J., concur.