Jack LAMPERT, Respondent,

v.

STATE FARM FIRE AND CASUALTY
COMPANY, Appellant.

No. ED 80350.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 30, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 19, 2002.

Application for Transfer Denied
Oct. 22, 2002.

Sam P. Rynearson, Susan M. Herold, St. Louis, MO, for Appellant.

Norton Y. Beilenson, Clayton, MO, for Respondent.

GARY M. GAERTNER, SR., Presiding Judge.

State Farm Fire and Casualty Company ("State Farm") appeals from the judgment of the Circuit Court of the City of St. Louis granting a motion for summary judgment in favor of respondent, Jack Lampert ("insured"). The trial court held that State Farm was liable to insured for failing to defend insured in an underlying suit. We affirm.

Insured and his wife (collectively "Lamperts") were the owners of the residential property located on Overbrook Drive in Ladue, Missouri, from 1984 to April 17, 1992. They purchased the property in 1984 from Dayton and Dorothy Mudd ("Mudds"). Lamperts experienced flooding and sewer back-ups and water seepage in the basement. On June 17, 1988, Lamperts filed suit against Mudds alleging that the property had numerous defects, including sewer back-ups, a propensity to flood, and water seepage in the basement. On February 27, 1992, Lamperts entered into a sales contract with Kenneth and Barbara Fischer ("Fischers") for the sale of the property. On April 17, 1992, the sale closed.

On September 13, 1996, Fischers filed suit against insured and others for fraud and negligence. State Farm defended the lawsuit subject to a reservation of rights clause described in a letter to Lamperts mailed November 15, 1996. The suit was later dismissed without prejudice. On April 2, 1997, State Farm mailed Lamperts a letter notifying them that the suit had been dismissed and that it might be re-filed, and asking Lamperts to contact State Farm if they should be served with a new lawsuit.

On November 18, 1997, Fischers refiled their suit against Lamperts and others. The counts against Lamperts were for fraud (count I), breach of fiduciary duty (count II), and negligent misrepresentation (count III). They alleged that the property had numerous defects, including sewer back-ups, water seepage in the basement, and flooding. Among other things, they alleged that the defects and conditions were not revealed to them, or were misrepresented to them not to exist or to be of lesser significance than they really were, causing the property to have less value than represented. Fischers further allege that insured acted "with bad faith, intentionally, with malice and/or with reckless disregard to the Fischers' rights," that "the Fischers were deceived and induced into signing the Sale Contract, and suffered pecuniary losses." Fischers alleged that they moved into their residence in November of 1992, and that within thirty

days the basement flooded, that they discovered that the residence grounds would be flooded after any significant rain, and that they discovered other defects that were substantial or latent or both.

State Farm initially provided a defense to this second suit, then refused to defend the suit notwithstanding several demands from insured that it do so. Insured subsequently retained attorney, David G. Ott ("Ott") to defend him. Insured paid Ott $41,465.50 as and for attorney fees, reimbursed Ott for expenses of $1,443.78, and paid direct expenses of $8,204.10. The case went to trial and a judgment was entered against insured in the net amount of $13,100.00. The verdict and judgment were predicated on a jury finding that insured had committed a fraud.

State Farm had in effect a Homeowners Policy of Insurance ("Homeowners policy") with Lamperts, Policy number 25–C8–1053–2, effective August 7, 1991 and expiring April 18, 1992. Homeowners policy provides coverage as follows:

> [I]f a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence,** we will: 1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and 2. provide a defense at our expense by counsel of our choice.

Occurrence is defined in the policy as an accident which results in bodily injury or property damage during the policy period. Bodily injury is defined as "physical injury, sickness, or disease to a person." The definition excludes communicable diseases, as well as "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person." Property damage is defined as "physical damage to or destruction of

tangible property, including loss of use of this property."

State Farm also had a Personal Liability Umbrella Policy ("PLUP") with insured, policy number 25–E7–3184–1, effective September 25, 1991 and expiring September 25, 1992, at which time it was renewed, expiring November 14, 1992. The PLUP provided coverage if the insured is legally obligated to pay damages for a "loss." "Loss" is defined as "an accident that results in **personal injury** or **property damage** during the policy period. This includes injurious exposure to conditions." Personal injury is defined in pertinent part as "bodily harm, sickness, disease, shock, mental anguish or mental injury." Property damage is defined as "physical injury to or destruction of tangible property." It includes the loss of use caused by the injury or destruction. PLUP also provides for defense of suits against the insured when the claim or suit is covered by PLUP but not covered by any other policy available to insured.

Both the Homeowners policy and the PLUP excluded coverage for bodily injury, personal injury or property damage that is either expected or intended by insured or to any person or property which is the result of willful and malicious acts of the insured.

Insured filed suit against State Farm seeking a declaration that State Farm had a duty to defend him in the Fischers' lawsuit and to indemnify him for the judgment rendered against him, and further seeking vexatious refusal damages. The parties filed cross-motions for summary judgment. The trial court granted insured's motion as to the issue of State Farm's duty to defend the Fischer's lawsuit, and awarded insured the sum of $51,117.38 as the costs incurred in defense of the suit and denied the motion in all other respects. The trial court granted State

Farm's motion as to the issue of State Farm's duty to indemnify the loss incurred as a result of the judgment rendered against insured in the underlying suit, and as to the issue of State Farm's liability for additional penalties for vexatious refusal damages. State Farm appeals.

■■■ Our review of a grant of summary judgment is essentially de novo. *Wood v. Safeco Ins. Co. of America*, 980 S.W.2d 43, 46 (Mo.App. E.D.1998). Movant for a summary judgment has the burden to show a right to judgment flowing from material facts about which there is no genuine dispute. *Id.* Whether or not summary judgment was proper is a question of law, and appellate courts need not defer to the trial court's order granting summary judgment. *Id.* Appellate courts view the record in the light most favorable to the party against whom judgment was entered, and take facts set forth in affidavits and otherwise in support of the motion as true unless they are contradicted by the non-moving party's response. *Id.*

State Farm argues that the trial court erred in granting insured's motion for summary judgment as to the issue of its duty to defend the underlying suit because insured failed to establish as a matter of law that any covered damage occurred during either policy period so as to trigger State Farm's duty to defend under either policy.

■■■ In Missouri, the duty to defend is broader than the duty to indemnify. *McCormack Baron Mgt. v. American Guarantee*, 989 S.W.2d 168, 170 (Mo.banc 1999). "To suggest that the insured must prove the insurer's obligation to pay before the insurer is required to provide a defense would make [the duty to defend] provision a hollow promise...." *Id.* (*quoting* 13 John A. Appleman & Jean Appleman, *Insurance Law and Practice*, section 4684 (rev.vol.1976)). The insurer's duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependent on the probable liability to pay based on the facts ascertained through trial. *McCormack Baron Mgt.* 989 S.W.2d at 168. The insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint. *Id.* "If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." *Id.* at 170–71. The presence of some insured claims in the underlying suit gives rise to a duty to defend, even though uninsured claims or claims beyond the coverage may also be present. *Wood*, 980 S.W.2d at 47.

In *Wood*, an insured sold real estate to a buyer. *Id.* at 45. Subsequently, the property flooded twice. *Id.* The buyer sued the insured for alleged misrepresentations that the insured made to buyer, prior to the sale, regarding flooding of the property. *Id.* The buyer alleged fraud due to intentional misrepresentations (count I) and negligent misrepresentations (count II). *Id.* Insurer refused to defend the insured against the lawsuit based upon the terms of a personal umbrella policy that the insurer issued to the insured. *Id.* The insured filed an action against the insurer. *Id.* The parties filed cross-motions for summary judgment. *Id.* The trial court granted summary judgment in favor of the insurer. *Id.* at 46. With respect to the negligent misrepresentation claim, the trial court concluded that the insurer did not have a duty to defend under the policy. *Id.*

This Court reversed the trial court's judgment as to the negligent misrepresentation claim. *Id.* at 53. We concluded that the alleged negligent representation damages are occurrences that are covered by the policy. *Id.* at 49–53. We noted

that whether or not the flooding damage is causally related to the misrepresentations should have been pursued by the insurer on behalf of the insured in the buyer's litigation rather than the insured in the duty to defend litigation. *Id.* at 53. This Court held that the buyer's allegations of negligent misrepresentation are claims potentially covered by the umbrella policy issued by the insurer to the insured and, under that policy, the insurer had a duty to defend the insured against the buyer's claim. *Id.*

Here, Fischers' second petition against Lamperts was for fraud, breach of fiduciary duty and negligent misrepresentation. Fischers alleged that the property had numerous defects, including sewer back-ups, water seepage in the basement and flooding when they entered into the sale contract to purchase the property. They alleged that the defects and conditions were not revealed to them, or were misrepresented to them not to exist or to be of lesser significance than they really were, causing the property to have less value than represented. Fischers alleged that as a result of Lamperts' fraudulent or negligent misrepresentations and omissions concerning the defects and conditions of the property, they suffered pecuniary losses.

Lamperts entered into a sales contract with the Fischers on February 27, 1992 and closed on April 17, 1992. Lamperts' Homeowners policy and the PLUP were in effect on February 27, 1992 and April 17, 1992. The Homeowners policy provided for defense of claims or suits against the insured. The PLUP provided for defense of suits against the insured when the claim or suit is covered by PLUP but not covered by any other policy available to the insured.

The allegations contained in Fischers' complaints pertain to defects and damages to the property and conditions of the property, such as the property's propensity to flood, which existed at the time of negotiations, sale and closing of the sale of the property. Like in *Wood*, Fischers' alleged negligent representation damages are occurrences that are covered by the policy. The presence of this claim in the underlying petition gives rise to a duty to defend, even though claims beyond the coverage, such as the fraud claim, may also be present. Whether or not the flooding damage is causally related to the misrepresentations, should have been pursued by State Farm on behalf of Lamperts in Fischers' litigation. Hence, like in *Wood*, we find that Fischers' negligent misrepresentation claim is potentially covered by Homeowners policy and the PLUP issued by State Farm to Lamperts, and the under the policies, State Farm had a duty to defend Lamperts against Fischers' claims. In fact, State Farm fulfilled its duty when Fischers filed their first petition and at the initial phase of the second petition, but later discontinued its defense. We conclude that the trial court correctly granted insured's motion for summary judgment because State Farm breached its duty to defend insured in the underlying suit.

Based on the foregoing, we affirm the judgment of the trial court.

PAUL J. SIMON, J. and CLIFFORD H. AHRENS, J. concur.