******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NEW LONDON COUNTY MUTUAL INSURANCE
COMPANY *v.* ANDREW SIELSKI ET AL.
(AC 36792)

DiPentima, C. J., and Prescott and Bear, Js.

*Argued May 14—officially released September 15, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Wiese, J.)

*Glenn E. Knierim, Jr.*, for the appellant (named
defendant).

*MaryKate J. Geary*, with whom, on the brief, was
*Matthew G. Conway*, for the appellee (plaintiff).

*Opinion*

BEAR, J. This appeal arises out of a declaratory judgment action in which the plaintiff, New London County Mutual Insurance Company, asserted that it did not have a duty to defend the insured defendant Andrew Sielski in a separate action brought by Meghan Wishneski and James Wishneski (Wishneskis) against the defendant.[1] On appeal, the defendant claims that the trial court improperly (1) rendered summary judgment in favor of the plaintiff because the damages claimed in the separate action were property damages as defined in the defendant's homeowners insurance policy (policy) with the plaintiff, and (2) determined that the question of whether the alleged damages constituted property damages within the meaning of the policy was a question of law rather than a question of fact. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the present appeal. On May 11, 2011, the Wishneskis commenced an action against the defendant (Wishneski action).[2] In their seven count, second amended complaint dated February 22, 2013, the Wishneskis alleged that they had entered into a contract to buy a residential property from the defendant. As part of his contractual obligations, the defendant completed a disclosure report, which included representations that he had no knowledge of any problems concerning basement water seepage, rot and water damage, water drainage problems, or driveway problems. After the Wishneskis purchased the property, however, they encountered a variety of problems, including drainage problems on the perimeter of the property, water coming into the property, and severe flooding that washed away their driveway. They also discovered rotten and moldy beams in the basement. The Wishneskis alleged that the defendant knew or should have known of these issues and misrepresented the condition of the home because of the exposure of the property to severe flooding during the period that the defendant owned it, and the Wishneskis' discovery of newer beams attached to older moldy and rotten beams in the basement. The Wishneskis alleged seven theories of recovery, all of which were predicated on the alleged misrepresentations of the defendant.

On June 6, 2011, and June 11, 2012, the plaintiff commenced this action against the defendant and the Wishneskis, respectively. In its December 19, 2012 amended complaint, the plaintiff alleged that although the defendant had a policy with it that was operative from February 28, 2007, until it was cancelled effective March 13, 2009, the date of the closing of the sale of the property to the Wishneskis, no claims alleged in the Wishneski action required it to defend or indemnify the defendant.

On April 8, 2013, the plaintiff filed a motion for sum-

mary judgment on the ground that there was no genuine issue of material fact in dispute and that the court could determine as a matter of law whether the plaintiff had a duty to defend or indemnify the defendant. On April 17, 2014, the court rendered summary judgment in favor of the plaintiff on its amended complaint, holding, inter alia, that the theory of negligent misrepresentation and resulting injury alleged in the Wishneski action did not constitute property damage as defined in the policy.[3] This appeal followed. Additional facts will be provided as necessary.

I

The defendant first claims that the court improperly rendered summary judgment in favor of the plaintiff because the alleged damages claimed in the Wishneski action as a result of the defendant's alleged misrepresentations constituted property damage within the meaning of the policy. The defendant relies heavily on *Capstone Building Corp.* v. *American Motorists Ins. Co.*, 308 Conn. 760, 67 A.3d 961 (2013), and argues that our Supreme Court's decision in *Capstone Building Corp.* controls this case. The defendant argues that in *Capstone Building Corp.*, the court interpreted policy definitions of "occurrence" and "property damage" similarly to those found in the policy at issue in the present case and found that an insurable injury had been alleged. Thus, the defendant argues that his alleged misrepresentations and the harm that allegedly resulted from them constitute both an occurrence and property damage within the coverage of the policy in the present case. We disagree.

We begin by setting forth the standard of review and legal principles that inform our analysis. "With respect to summary judgment, our standard of review is well established. Summary judgment rulings present questions of law; accordingly, [o]ur review of the . . . decision to grant [a] . . . motion for summary judgment is plenary. . . . In addition, the interpretation of an insurance contract presents a question of law, over which our review is plenary. . . . Finally, with respect to an insurer's duty to defend a claim brought against the insured, [t]he question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy." (Citations omitted; internal quotation marks omitted.) *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, 308 Conn. 146, 154, 61 A.3d 485 (2013).

"Under the well established four corners doctrine, the duty to defend is broader than the duty to indemnify. . . . An insurer's duty to defend is triggered if at least one allegation of the complaint falls even possibly within the coverage. . . . Indeed, [i]t is well established . . . that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege

a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered. . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . In contrast to the duty to defend, the duty to indemnify is narrower: while the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case. . . . Thus, the duty to defend is triggered whenever a complaint alleges facts that potentially could fall within the scope of coverage . . . ." (Internal quotation marks omitted.) *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, 312 Conn. 714, 739, 95 A.3d 1031 (2014). "Because the duty to defend is significantly broader than the duty to indemnify, where there is no duty to defend, there is no duty to indemnify . . . ." (Internal quotation marks omitted.) *DaCruz* v. *State Farm Fire & Casualty Co.*, 268 Conn. 675, 688, 846 A.2d 849 (2004).

The question of whether the alleged damages in the present case constitute property damage as defined in the policy requires this court to interpret the policy. "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract . . . . In accordance with those principles, [t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . Under those circumstances, the policy is to be given effect according to its terms. . . . When interpreting [an insurance policy], we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." (Internal quotation marks omitted.) *Lexington Ins. Co.* v. *Lexington Healthcare Group, Inc.*, 311 Conn. 29, 37–38, 84 A.3d 1167 (2014).

In the present case, section II, coverage E, of the policy defines the defendant's liability coverage. It provides, in relevant part, that the plaintiff will defend and indemnify the defendant "[i]f a claim is made or a suit is brought . . . for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies . . . ." The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general

harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or b. 'Property damage.' " "Property damage," in turn, is defined as "physical injury to, destruction of, or loss of use of tangible property."

Neither this court nor our Supreme Court has addressed whether damages arising from a negligent misrepresentation may be considered property damage or under what circumstances a negligent misrepresentation can give rise to an occurrence within the meaning of a homeowners insurance policy. Decisions from our Superior Court have uniformly held that damages flowing from misrepresentations are not property damage as that term is normally used in homeowners insurance policies. See *Amica Mutual Ins. Co.* v. *Paradis*, Superior Court, judicial district of Hartford, Docket No. CV-13-6041224-S (October 16, 2014) (59 Conn. L. Rptr. 151, 153) (claim in underlying action not property damage because "the alleged misrepresentations could not have caused the property damage; the alleged physical flaws in the property necessarily predated and were the subject of the misrepresentations") (appeal to Appellate Court, AC 37353, withdrawn June 30, 2015); *Amica Mutual Ins. Co.* v. *Basu*, Superior Court, judicial district of Hartford, Docket No. CV-12-6034435-S (December 20, 2013) (57 Conn. L. Rptr. 340, 340, 342) (nondisclosure and concealment of preexisting cracks in basement walls that became worse after buyer purchased house predated defendant's acts and held not to be claim for property damage); *Electric Ins. Co.* v. *Santo*, Superior Court, judicial district of Waterbury, Docket No. CV-06-4011494-S (August 6, 2007) (44 Conn. L. Rptr. 41, 43–44) (misrepresentations concerning whether wood stove and chimney were functional were not claims for property damage). Relying on this trial court authority, the United States District Court for the District of Connecticut similarly has held that any damages arising from negligent misrepresentations were economic damages, rather than property damage within the ambit of an insurance policy. See *Homestead Country Properties, LLC* v. *American Modern Home Ins. Co.*, Docket No. 3:12CV1003 (JBA), 2013 WL 3716383, *4 (D. Conn. July 12, 2013).

In response to this court's questions during oral argument about how he would respond to the principles in the previously cited authority, the defendant argued that *Capstone Building Corp.* has rendered the legal theory on which those cases relied invalid. In *Capstone Building Corp.*, our Supreme Court addressed on certification from the United States District Court for the Northern District of Alabama, inter alia, "[w]hether damage to a project contracted to be built, which was caused by defective construction or faulty workmanship associated with the construction project, may constitute property damage resulting from an occurrence, triggering coverage under a commercial general liability

insurance policy . . . ." (Internal quotation marks omitted.) *Capstone Building Corp.* v. *American Motorists Ins. Co.*, supra, 308 Conn. 771. The court held that the defective construction as a volitional, albeit negligent, act was not per se excluded from the insurance policy's definition of an occurrence. Id., 776. It also concluded that physical damages caused by the defective work, such as water and mold damage, could qualify as " '[p]hysical injury to tangible property,' " but that property damage within the coverage of the policy at issue did not include the escape of carbon monoxide alone, the defective work itself, or the cost of repairing defective work to prevent future harm to the property. Id., 779–87.

In analyzing whether the alleged injuries could be considered property damage, however, our Supreme Court did not have any reason to address the issue of whether there was any damage to the property that preexisted the asserted occurrence or a third party's damages that flowed from a purported misrepresentation of fact concerning past damage to, or defect in, tangible property that would be considered property damage under the policy. See id., 777–87. Further, there were no disputes between the parties regarding any causal connection between the alleged activity and the asserted property damage; rather, the certified question before the court assumed that the defective work itself was the cause of the injury suffered. See id., 771. Thus, despite some cursory similarities, we find that *Capstone Building Corp.* is readily distinguishable from the circumstances of the present case.

Numerous courts outside this state have addressed the issue of whether misrepresentation claims are covered by a homeowners or commercial general liability insurance policy. Though these courts have analyzed that issue in a number of ways, a few distinct trends can be discerned. A number of courts have concluded, similarly to our Superior Court, that damages resulting from misrepresentations are economic or contractual in nature and do not give rise to property damages within the coverage of the relevant policy. For instance, in *St. Paul Fire & Marine Ins. Co.* v. *Lippincott*, 287 F.3d 703, 706 (8th Cir. 2002), the court held that misrepresentations concerning, and efforts to conceal, structural cracks were not property damage giving rise to a duty to defend in a separate action because these actions did not create the damage in question. As the court noted, "[t]he structural flaws in the house constitute tangible property damage, but these flaws predate the occurrence of concealments and misrepresentations by which the [defendants] incurred liability." Id. The court concluded that the judgment encompassed "the intangible losses incurred when the [third parties] relied to their economic detriment upon the misrepresentations. These damages are pecuniary in nature and are not property damage within the meaning of the . . .

insurance policies." Id.

In holding that no property damage had been alleged within the terms of a homeowners insurance policy, the court in *USAA Casualty Ins. Co.* v. *Bateman*, United States District Court, Docket No. 2:07-CV-3700 (E.D. Pa. October 30, 2008), stated: "The acts at issue in the underlying lawsuit amounted to a misrepresentation of the status of the home, whether it be intentional or negligent. At no point did [the defendant's] acts ever inflict damage on the home that was not already in existence prior to the acts in question. Similarly, [the defendant's] acts did not even limit the use of the home for the [u]nderlying [p]laintiffs. While the alleged acts did impose on the [u]nderlying [p]laintiffs some harm, the 'tangible property' here was not changed in any way *by the misrepresentation*. The house was in the same state prior to the sale as it was after the sale. The only harm that occurred was that the [u]nderlying [p]laintiffs did not purchase the home they expected to purchase. This, however, does not constitute 'property damage.' " (Emphasis added.) Accord *State Farm Lloyds* v. *Kessler*, 932 S.W.2d 732, 737 (Tex. App. 1996) ("The [third parties'] petition . . . describe[s] drainage and foundation problems. But those problems are not 'property damage' for which the [defendants] are legally liable because the [third parties] do not assert that the [defendants] injured the property, destroyed the property, or caused the resulting loss of use. Instead, the [third parties] allege that the [defendants] misrepresented the problems. The [defendants'] alleged misrepresentations did not *cause* the drainage and foundation problems; those problems existed before negotiations began." [Emphasis in original.]), writ denied (June 12, 1997); *Aluise* v. *Nationwide Mutual Fire Ins. Co.*, 218 W. Va. 498, 501, 506–507, 625 S.E.2d 260 (2005) (cracks in foundational walls and moisture buildup related to misrepresentation claims merely economic losses and therefore not covered property damage within policy terms).

Other courts have held that there was no coverage under a homeowners or commercial general liability insurance policy for other reasons. In some circumstances, the courts relied on the presence of a volitional act to hold that no accident took place and, therefore, there was no occurrence, even if the act was predicated on a mistake. See *Everson* v. *Lorenz*, 280 Wis. 2d 1, 16, 695 N.W.2d 298 (2005). Courts also have refused to find a causal link between any misrepresentation and the purported property damage. See, e.g., *Colony Ins. Co.* v. *Montecito Renaissance, Inc.*, Docket No. 8:09-CV-1469-T-30MAP, 2011 WL 4529948, *6 (M.D. Fla. September 30, 2011) (no occurrence in commercial general liability insurance policy where "alleged failure of [d]eveloper and others to make adequate and truthful disclosures in the [p]rospectus *did not cause* any of the alleged physical defects . . . [because] any . . .

physical damage [to the condominium complex] was caused by defective construction, and/or maintenance of the property" [emphasis in original]); *Boggs* v. *Great Northern Ins. Co.*, 659 F. Supp. 2d 1199, 1212 (N.D. Okla. 2009) (although misrepresentations may have caused purchase of house, no occurrence found where plaintiffs' "alleged misrepresentations had no effect on the condition of the fireplaces, because the fireplaces were defective when the house was built");[4] *State Farm Fire & Casualty Co.* v. *Gwin*, 658 So. 2d 426, 427–28 (Ala. 1995) (misrepresentations about property infested with termites, leaky roof, and defective electrical wiring did not cause those damages); *Everson* v. *Lorenz*, supra, 27 (no " 'causation nexus' between property damage and alleged actions because the 'property damage' . . . was caused by the preexisting 100-year flood plain, not by any presale misrepresentation").[5]

Finally, in a case not involving the interpretation of an insurance policy, our Supreme Court relied on the Restatement (Second) of Torts in discussing the type of damages arising from a negligent misrepresentation: "Section 552B (1) of the Restatement (Second) of Torts provides: The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a *legal cause*, including (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation." (Emphasis added; internal quotation marks omitted.) *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 645 n.25, 850 A.2d 145 (2004).

In the present case, the gravamen of the Wishneskis' claim of negligent misrepresentation is that, in the course of selling the home, the defendant was required to submit to the Wishneskis a residential property disclosure report. In that report, the defendant claimed that he had no knowledge of any problems relating to the property including water seepage, rot and water damage, water drainage problems, and driveway problems. The Wishneskis relied on these representations and purchased the property on March 13, 2009. The defendant's representations were false or inaccurate, which the Wishneskis discovered only after they purchased and occupied the property. The property suffered from preexisting conditions, problems, and defects including susceptibility to flooding, inadequate water drainage, mold, rot, and other uncorrected water damage. Although the Wishneskis' alleged damages arose from these undisclosed conditions, problems, and defects, the gravamen of their claim is that they suffered economic and pecuniary damages as a result of the defendant's alleged misrepresentations which induced them to purchase the property. As in many of the cases previously discussed, the alleged conditions, problems,

and defects existed prior to the defendant's alleged misrepresentations, and subsequent incidents causing damage after the Wishneskis purchased the property were the result of those preexisting conditions, problems, and defects.

On the basis of our review of the record and relevant case law, we are persuaded that the court properly determined that the damages claimed by the Wishneskis as a result of the defendant's alleged misrepresentations constituted economic or pecuniary losses, and not property damage within the ambit of the coverage of the policy. See, e.g., *Aluise* v. *Nationwide Mutual Fire Ins. Co.*, supra, 218 W. Va. 506 ("damages flowing from misrepresentation . . . have no basis [as] property damage; rather, the only cognizable damages from such torts are economic and contractual in nature and as such do not fall within the scope of coverage afforded by [homeowners] policies . . . ." [internal quotation marks omitted]). The court, therefore, properly concluded that the plaintiff did not have a duty to defend the defendant under these circumstances.

Even if we were to consider the Wishneskis' alleged damages resulting from the defendant's alleged misrepresentations as property damage as that term is defined within the policy, we agree with those courts that have held that misrepresentations under similar circumstances cannot be considered to cause in actual fact or proximately the damages in question. "Traditionally, an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Nazami* v. *Patrons Mutual Ins. Co.*, 280 Conn. 619, 626, 910 A.2d 209 (2006) (liability for negligent misrepresentation can be predicated on misrepresentation of fact "that the defendant . . . should have known was false"); compare *Capstone Building Corp.* v. *American Motorists Ins. Co.*, supra, 308 Conn. 775 ("[a] deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly" [internal quotation marks omitted]). The policy here requires that the accident "results . . . in" or "cause[s]" the property damages for the duty to defend to arise. Although the Wishneskis' alleged economic and pecuniary damages derive from their reliance on the defendant's alleged misrepresentations, none of the damage to the property was caused in fact or proximately by the defendant's misrepresentations. See *Langevin* v. *Allstate Ins. Co.*, 66 A.3d 585, 590–91 (Me. 2013) (where complaint alleged damages caused by negligent misrepresentations, to be covered under policy, physical damage to property must have directly resulted from negligent misrepresentations). The Wish-

neskis may have purchased the property as a direct result of the defendant's alleged misrepresentations, but the actual property damage would have existed with or without such misrepresentations or the Wishneskis' purchase. The alleged negligent misrepresentations, therefore, were not the actual or proximate cause of the damage to the property. See id., 591 ("damages for undisclosed physical problems are not covered by the policy because those physical problems did not result from the 'occurrence' alleged in the underlying complaint"), citing *Veilleux* v. *National Broadcasting Co.*, 206 F.3d 92, 123–24 (1st Cir. 2000), and 3 Restatement (Second), Torts § 552B (1977); see also *Winn* v. *Posades*, 281 Conn. 50, 56–57, 913 A.2d 407 (2007) (both actual and proximate causation required to make out legal cause in negligence claim).[6]

Our Supreme Court has stated that "[it] will not predicate the duty to defend on a reading of a complaint that is . . . conceivable but tortured and unreasonable. . . . Thus, although an insurer is not excused from its duty to defend merely because the underlying complaint does not specify the connection between the stated cause of action and the policy coverage . . . the insurer has a duty to defend only if the underlying complaint reasonably alleges an injury that is covered by the policy." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, supra, 308 Conn. 156. As stated in another context, a sequential relationship, without more, is insufficient to show the requisite causal connection. See id., 163 n.11. Consequently, we conclude that the court properly determined that there was no duty to defend.[7]

## II

Next, the defendant claims that the trial court improperly determined that the question of whether the damages claimed in the Wishneski action constituted property damages within the meaning of the policy was a question of law rather than a question of fact, which would have precluded the granting of summary judgment. In support of this claim, he relies on the following language in *Capstone Building Corp.*: "[W]hether an insured party makes a viable claim for property damage is a highly fact-dependent determination in each case." *Capstone Building Corp.* v. *American Motorists Ins. Co.*, supra, 308 Conn. 778. The defendant notes that the plaintiff submitted only three exhibits in support of its motion for summary judgment, that only one of these exhibits contained evidence concerning the damages claimed, and that the damages alleged all fall within the definition of property damage in *Capstone Building Corp.* The defendant argues that, based on the evidence submitted, the plaintiff has not offered any proof that the damages claimed in the Wishneski action were not property damage as defined within the policy. We dis-

agree with the defendant's characterization of what this determination requires.

As noted previously, the standard of review both for a summary judgment and a determination concerning an insurer's duty to defend is plenary. *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, supra, 308 Conn. 154. Our Supreme Court has repeatedly stated that the question of whether an insurer has a duty to defend is " 'purely a question of law' . . . ." Id.; accord *Wentland* v. *American Equity Ins. Co.*, 267 Conn. 592, 599 n.7, 840 A.2d 1158 (2004); *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 395, 757 A.2d 1074 (2000). The court has also long held that an insurer's duty to defend is determined by reference to the insurance policy and the complaint in the underlying action. See *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, supra, 155; *Smedley Co.* v. *Employers Mutual Liability Ins. Co.*, 143 Conn. 510, 516–17, 123 A.2d 755 (1956). Although there are circumstances where facts beyond those alleged in the underlying complaint and which are known to the insurer can require the insurer to provide a defense, an insurer cannot rely on extrinsic facts to refuse to provide a defense. See *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, 274 Conn. 457, 464, 466–67, 876 A.2d 1139 (2005); accord *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, supra, 161 ("the duty to defend must be determined by the allegations set forth in the underlying complaint itself, with reliance on extrinsic facts being permitted only if those facts support the duty to defend").

In light of the foregoing principles, this court has stated that "[t]o prevail on its own motion for summary judgment . . . for a declaratory judgment that it has no duty to defend in the underlying action, the insurer must establish that there is no genuine issue of material fact either that no allegation of the underlying complaint falls even possibly within the scope of the insuring agreement or, even if it might, that any claim based on such an allegation is excluded from coverage under an applicable policy exclusion. . . . [T]he insurer . . . is *necessarily limited* to the provisions of the subject insurance policy and the allegations of the underlying complaint." (Emphasis added; internal quotation marks omitted.) *New London County Mutual Ins. Co.* v. *Bialobrodec*, 137 Conn. App. 474, 479, 48 A.3d 742 (2012). As the duty to defend may be resolved solely by referencing the allegations of the complaint and the insurance policy pursuant to the "four corners" principle, it necessarily follows that whether "property damage" has been alleged as one of the component parts of that determination may also be addressed solely by reference to those two documents.

The defendant's reliance on *Capstone Building Corp.*

is misplaced as it does not provide reason to deviate from this authority. In determining whether the damages alleged to have arisen out of the defective construction or faulty workmanship constituted property damage within the terms of the policy, our Supreme Court stated in *Capstone Building Corp.*: "Although we reject [the insurance company's] argument that the insuring agreement never covers damage to the insured's project, whether an insured party makes a viable claim for property damage is a highly fact-dependent determination in each case. The allegations detailed in the District Court's memorandum of law may be divided into four categories: (1) damage to nondefective property stemming from defective construction; (2) carbon monoxide; (3) defective work, standing alone, including building and fire safety code violations; and (4) repairs to damaged work." *Capstone Building Corp.* v. *American Motorists Ins. Co.*, supra, 308 Conn. 777–78. The court then proceeded to examine each of these categories, holding that the first ground, if properly alleged, would set forth a claim for property damage within the terms of the policy, and that the remaining three would not provide a basis for such an allegation. Id., 779–87. Thus, the language to which the defendant points in *Capstone Building Corp.* does not demonstrate the intent of the court to deviate from its longstanding precedent. Rather, when placed in its proper context, this language demonstrates that the court was rejecting a per se rule for or against including all damages related to defective construction in the initial grant of coverage and requiring, instead, that any damages claimed be considered individually.[8]

As *Capstone Building Corp.* does not change the nature of the determination that insurers and the courts must make in evaluating whether a duty to defend exists, that determination remains a question of law. See *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, supra, 308 Conn. 154. Therefore, we conclude that the trial court properly treated the question of whether the damages constituted property damage within the meaning of the policy as a question of law.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The Wishneskis are also named as defendants in the plaintiff's complaint. Neither filed an appearance in the declaratory judgment action, and a motion for default against each of them was granted on November 13, 2012. Additionally, neither of the Wishneskis has appeared in this appeal. Because they have not taken an active role in the deliberations before the trial court or this court, all references to the defendant in this opinion refer solely to Sielski.

[2] The defendant has also been referred to as "Andrzej Sielski" in both actions.

[3] The trial court held that none of the theories advanced in the second amended complaint in the Wishneski action were for claims of property damage or bodily injury. The defendant does not challenge the trial court's determination as to the lack of application of the bodily injury coverage and has limited his arguments on appeal to the claim that the alleged damages for negligent misrepresentation implicate his property damage coverage.

[4] Although this portion of the court's analysis addressed whether there was a duty to indemnify, the court later held that there was also no duty to defend because "none of the [u]nderlying [c]laims gave rise to liability under the [p]olicies, because the [third party's] claims were not covered," and relied on its previous analysis concerning the duty to indemnify to demonstrate this point. *Boggs* v. *Great Northern Ins. Co.*, supra, 659 F. Supp. 2d 1214. "Thus, the [i]nsurance [c]ompanies could properly conclude that no potential for liability existed." Id.

[5] There are, however, a minority of courts that have held that such situations can create property damage and an occurrence sufficient to give rise to a duty to defend. For instance, in *Wood* v. *Safeco Ins. Co. of America*, 980 S.W.2d 43, 47 (Mo. App. 1998), the buyer alleged that the insured seller of the properties represented, inter alia, that the residence was not in a flood plain and that it had not previously flooded. They further alleged that, after they had purchased the property, the entire property flooded and that they would not have bought the property if they had known the true facts. The court held that a misrepresentation under such circumstances could qualify as an accident because the falsity in the statement and resulting harm might be accidental. Id., 52. Similarly, the court held that the alleged damages included flooding damage to the property, which the buyers would not have suffered without the false representations because they would not have bought the house, and that the several feet of water implicated the " 'loss of use' " portion of the " 'property damage' " requirement. Id., 53. Finally, the court held that the ultimate determination of the causal relationship should have been addressed in the litigation by the insurer rather than in the separate action. Id. On this basis, the court held that a duty to defend existed. Id.; accord *USAA Casualty Ins. Co.* v. *McInerney*, 960 N.E.2d 655, 662 (Ill. App. 2011), leave to appeal denied, 968 N.E.2d 89 (Ill. 2012); *Sheets* v. *Brethren Mutual Ins. Co.*, 342 Md. 634, 658, 679 A.2d 540 (1996). We are not persuaded by the reasoning of these cases.

[6] "To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct legally caused the injuries. . . . The first component of legal cause is causation in fact. Causation in fact is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct. . . . The second component of legal cause is proximate cause . . . . [T]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. . . . Further, it is the plaintiff who bears the burden to prove an unbroken sequence of events that tied his injuries to the [defendants' conduct]. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. . . . This causal connection must be based upon more than conjecture and surmise. . . . An actual cause that is a substantial factor in the resulting harm is a proximate cause of that harm. . . . The finding of actual cause is thus a requisite for any finding of proximate cause." (Citation omitted; internal quotation marks omitted.) *Winn* v. *Posades*, supra, 281 Conn. 56–57.

[7] In his reply brief, the defendant attempts to bring the situation here back within the ambit of *Capstone Building Corp.* by analogizing the causation of the water and mold damage in both cases: "Although the court [in *Capstone Building Corp.*] did not describe the precise mechanism of the mold and water damage, logic suggests that the faulty construction did not directly cause the water and mold damage to the tangible property. Water and mold damage occur over time, as the water penetrates and soaks the materials. Mold grows on the saturated material from spores found in the environment. Thus, in *Capstone Building Corp.*, the direct cause of the damage was the introduction of water or moisture unto the materials. The faulty construction was the indirect cause for failing to protect the material from the water or moisture. Nonetheless, in *Capstone Building Corp.* the Supreme Court determined that the occurrence (faulty construction) caused the property damage (the water and mold damage)."

This argument fails to persuade us. The causation issue in *Capstone Building Corp.* is both presumed and fairly direct: if there had been no faulty construction, then the moisture that gave rise to the water and mold damage might not have entered the property. In the present case, however, there has been no argument as to how the negligent misrepresentation caused the tangible property damage in question; as alleged in the complaint, the conditions giving rise to these issues existed prior to any misrepresentations or concealment by the defendant, so the misrepresentations cannot fairly be said to have caused the conditions. The differentiation between

*Capstone Building Corp.* and this case can be succinctly stated this way: If the defendant had adequately disclosed the alleged deficiencies of, or existing damage to, the property, he would have no liability in the Wishneski action even though the deficiencies and damage still would have existed and even though the property still would have subsequently flooded because of the topography of the land in the area of the property.

[8] Our Supreme Court has continued to use a similar articulation of the "four corner" principle even after its decision in *Capstone Building Corp.* See *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, supra, 312 Conn. 739.

––––––––––––––––––––––––––––